UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE BROOKS, et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>GREYSTAR REAL ESTATE PARTNERS, LLC, GREYSTAR CALIFORNIA INC., et al.,<br><br>               Defendants. | Case No.:  23cv1729-LL-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[ECF No. 34] |

Before the Court is a Motion to Compel Arbitration ("Motion") filed by Defendants Greystar California, Inc. and Greystar Real Estate Partners, LLC (collectively "Greystar" or "Defendants"). ECF No. 34. Plaintiffs filed an Opposition to the Motion [ECF No. 36] and Defendants filed a Reply [ECF No. 40]. The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Upon review of the parties' submissions and the applicable law, the Court **GRANTS** the Motion to Compel Arbitration but **DENIES** Defendants' request to stay this action for the reasons set forth below.

/ / /

/ / /

## I. BACKGROUND

In the First Amended Complaint ("FAC"), Plaintiff Philip McGill ("McGill"), along with five other Plaintiffs, sue Greystar and almost 480 different Defendants ("Entity Defendants") in a putative class action, claiming Greystar unlawfully withheld portions of their security deposits without providing required statutory disclosures. ECF No. 10 ¶ 6. Plaintiffs allege that Greystar "owns, controls and/or manages" hundreds of properties on behalf of Entity Defendants. *Id*. ¶¶ 29, 35. On January 19, 2024, Plaintiffs voluntarily dismissed the 478 Entity Defendants. ECF No. 30. In response, Greystar updated its Motion to Compel Arbitration. ECF Nos. 12, 34.

On September 25, 2020, McGill signed a lease contract with former Defendant Lofts 707 Holdco, LLC (the "Owner") to rent an apartment at the "Tenth & G" apartment community (the "Apartment"). ECF No. 34-2, Declaration of Donnie Provost ("Provost Decl."), ¶ 5. Greystar managed the Apartment. *Id*. ¶ 3. The lease contract required McGill to pay a security deposit of $3,378. *Id*. ¶ 5. On November 15, 2022, McGill signed a new lease contract including various addenda to the contract (collectively, the "Lease"). *Id*. ¶ 6. The Lease included a security deposit provision similar to McGill's previous lease contract, and also included the Arbitration Agreement as an addendum. *Id*. McGill ultimately moved out of the apartment on May 1, 2023. *Id*. ¶ 11.

The Arbitration Agreement between McGill and the Owner includes the following:

> We agree that any and all claims between us and/or arising from or relating to this Lease Contract shall be subject to binding arbitration under the Federal Arbitration Act ("FAA"). This includes claims based on contract, tort, equity, statute, or otherwise, as well as claims regarding the scope and enforceability of this provision. This includes all claims by or against You, other Residents, Owner, and Owner's Agents.

ECF No. 34-2 at 16. The Arbitration Agreement additionally includes a class action waiver clause that includes the following:

> Accordingly, You expressly waive any right and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us in any forum. Any claim that all or any part of the Class Action Waiver is

23cv1729-LL-VET

unenforceable, unconscionable, void, or voidable shall be determined by the arbitration service chosen by the parties.

*Id*.

McGill alleges in the FAC that after he moved out in May 2023 he received a final account statement indicating he owed $425.69 for "total damage and cleaning charges." ECF No. 10 ¶ 505. McGill alleges Greystar never returned the remaining deposit balance to him and never provided him with a "vendor invoice or proper documentation for any of the services purported to have been performed on his past residence evidencing bad faith." *Id*. ¶ 506. McGill and the other named Plaintiffs bring a claim for violation of California Civil Code section 1950.5 and a derivative claim for violation of the Unfair Competition Law, California Business and Professions Code section 17200. ECF No. 36 at 13; ECF No. 10 ¶¶ 529, 536–38.

The instant Motion seeks to compel Plaintiff McGill to arbitrate his claims against Greystar and to stay this action pending the outcome of that arbitration. ECF No. 34.

## II.    LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). "[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

On a motion to compel arbitration under the FAA, a court must compel arbitration if: "(1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of the agreement." *Geier v. m-Qube Inc.,* 824 F.3d 797, 799 (9th Cir. 2016) (per curiam). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates

23cv1729-LL-VET

that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

## III.   DISCUSSION

Defendants assert in their Motion to Compel Arbitration that: (1) McGill agreed to arbitration; (2) the claims here are subject to the Arbitration Agreement and Greystar has the right to compel arbitration; (3) the Arbitration Agreement is enforceable; and (4) the Court should stay this action pending arbitration. ECF No. 34-1 at 6–7.

In response to Defendants' Motion, Plaintiffs argue that: (1) "settled California and Ninth Circuit precedent make clear that the issues presented here cannot be contractually delegated to an arbitrator"; (2) "Greystar has failed to carry its burden to show that McGill assented to the Arbitration Agreement"; (3) "California Civil Code § 1953(a) expressly invalidates arbitration agreements in connection with residential leases"; (4) "even if McGill agreed to an arbitration agreement with his landlord—and he didn't—Greystar has no standing to enforce that agreement"; (5) "the Arbitration Agreement that Greystar relies upon is both procedurally and substantively unconscionable"; and (6) there is no basis to stay this action. ECF No. 36 at 12.

The Court notes that the parties do not appear to dispute the second requirement for compelling arbitration under the FAA regarding whether the dispute falls within the scope of the agreement. Upon the Court's review, it finds McGill's claims against Defendants about their handling of his security deposit arises from and relates to the Lease, thus falling within the scope of the Arbitration Agreement. *See infra* Part III.C.1.

### A.   Assent to Arbitration

Challenges to the existence of a contract must be determined by the court prior to ordering arbitration. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991). "[W]hile doubts concerning the scope of an arbitration clause

23cv1729-LL-VET

should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (citation omitted). If the existence of an arbitration agreement is at issue, the court must "apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

"It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also* Restatement (Second) of Contracts § 3 ("An agreement is a manifestation of mutual assent on the part of two or more persons."). "'Mutual assent may be manifested by written or spoken words, or by conduct,' and acceptance of contract terms may be implied through action or inaction." *Knutson*, 771 F.3d at 565. (citations omitted). "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972)). Under California law, "[t]he party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature." *Bannister v. Marinidence Opco, LLC*, 64 Cal. App. 5th 541, 543 (2021) (citation omitted).

The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (2023) (citing *Knutson*, 771 F.3d at 565). On the other hand, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *Three Valleys Mun.*, 925 F.2d at 1141 (citation omitted). Accordingly, a court may find that an agreement to arbitrate exists "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Id*.

///

23cv1729-LL-VET

Arbitration agreements may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC*, 563 U.S. at 339 (internal quotation marks and citation omitted). Motions to compel arbitration under the FAA are evaluated on the summary judgment standard provided by Federal Rule of Civil Procedure 56. *Hansen v. LMB Mortgage Servs.*, 1 F.4th 667, 670 (9th Cir. 2021) (collecting cases). As such, the Court construes reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

In this case, Defendants met their initial burden to show that a valid arbitration agreement exists by providing a copy of McGill's signed Lease with McGill's electronic signature. ECF No. 34-2 at 81. Donnie Provost ("Provost"), Senior Managing Director, Property Systems, for Greystar Management Services, LLC, a subsidiary of Defendant Greystar Real Estate Partners, LLC, attests that Defendants' records show that on November 15, 2022, McGill signed a new lease contract and each of its pages and addenda electronically via the Click & Lease Program using DocuSign. Provost Decl. ¶¶ 6–7.

McGill does not dispute that the presented DocuSign signature on the Lease is his. *See* ECF No. 36 at 16. Instead, Plaintiffs argue that: (1) McGill did not sign nor agree to the Arbitration Agreement addendum; (2) McGill never agreed to arbitrate claims *against Greystar*; and (3) any such agreement would be void under California statute in any event. *Id*. at 11, 16.

As an initial matter, the Court overrules Plaintiffs' evidentiary objections. Plaintiffs make evidentiary objections to Provost's declaration and its exhibits for lack of foundation, hearsay, irrelevance, being vague and conclusory, and inadequate authentication. ECF Nos. 36-3, 41. In a motion to compel arbitration, a court does not "focus on the admissibility of the evidence's form, so long as the contents are capable of presentation in an admissible form at trial." *Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *7 (N.D. Cal. Sept. 26, 2019) (internal quotation marks and citation

23cv1729-LL-VET

omitted). The Court finds Provost can testify to the facts in his declaration, which are relevant and based on his personal knowledge and/or personal knowledge obtained from his review of Defendants' documents and records kept in the course of the regularly conducted activity of their business. Fed. R. Evid. 803(6), 901(b)(1); Provost Decl. ¶ 2.

The Court finds that McGill electronically signed the Lease. Provost attests that residents of Defendants' rental properties use an electronic program called "Click & Lease" to review and sign leases. Provost Decl. ¶ 4. Provost states that residents "can take as much time as they wish to read, reread, and consider leases (and any addenda, including arbitration agreements) prior to signing." *Id.* He explains that when "the resident clicks to electronically sign the lease, DocuSign applies the electronic signature that person had created to the signature line of the lease and DocuSign notes that each page of the lease and its addenda have been signed." *Id.* The Court's review of the Lease shows McGill's electronic signature dated November 15, 2022, as well as the following note on the bottom of each page of the lease agreement and addenda: "Document digitally signed using RENTCafe eSignature services. Document ID: 1172646012." ECF No. 34-2 at 88, 9–87. McGill attests that the lease agreement was provided in an online platform and he "scrolled through the Lease Contract to the signature line." ECF No. 36-2, Declaration of Philip McGill ("McGill Decl."), ¶¶ 6–7. He stated that when he was prompted to "click to sign the Lease Contract," he did so, but that he does not recall "seeing, reviewing, or being asked to sign or approve an arbitration agreement." *Id.* ¶¶ 7–8. The Arbitration Agreement addenda is clearly titled as such in bold type and contains the following clause: "OPT-OUT REQUIREMENT. You may opt-out of this arbitration provision by providing written notice to the Owner within thirty days of signing this Agreement." ECF No. 34-2 at 16.

/ / /

/ / /

/ / /

/ / /

/ / /

7

23cv1729-LL-VET

The Court finds that by electronically signing the Lease, McGill agreed to the entire Lease, including the addenda, each page of which was part of one electronic document.[1] His single signature was electronically referenced on each page of the agreement, thus satisfying any signature requirement for each addendum, if so required. McGill cannot avoid the terms of the entire agreement, including the addenda, because he did not read it despite a legitimate opportunity to do so. *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) ("Lee cannot avoid the terms of [the] contract on the ground that he . . . failed to read it before signing." (alteration in original) (internal quotation marks and citation omitted)); *Desert Outdoor Advert. v. Superior Ct.*, 196 Cal. App. 4th 866, 872 (2011) ("A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement."). There is no evidence that McGill opted out of the Arbitration Agreement by proving written notice within thirty days of signing the Lease. Therefore, the Court finds McGill assented to the Arbitration Agreement.

### B.    Applicability of the FAA to the Arbitration Agreement

The Court finds the FAA applies to the Arbitration Agreement. The FAA "makes contracts to arbitrate 'valid, irrevocable, and enforceable,' so long as their subject involves 'commerce.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 2). "Real estate rental is an activity that affects interstate commerce as a matter of law." *Cho v. Casnak LLC*, No. 222CV04642JLSAFM, 2022 WL 16894869, at *3 (C.D. Cal. Sept. 7, 2022) (citing *Russell v. United States*, 471 U.S. 858, 862 (1985)) (finding that the rental of both commercial and residential real estate is an economic activity that affects interstate commerce and that the FAA governs rental leases). Because

---

[1] This differs from the arbitration clause in the Ninth Circuit case cited by Plaintiffs, which was not clearly visible and accessible only through clicking a hyperlink to a second unrelated set of "Terms and Conditions." ECF No. 36 at 21; *Lee v. Intelius Inc.*, 737 F.3d 1254, 1262 (9th Cir. 2013).

real estate rental involves interstate commerce, the FAA's reach applies to real estate leases such as the Lease at issue here. *See Hall St. Assocs., L.L.C.*, 552 U.S. at 590; *Russell*, 471 U.S. at 862; *Cho*, 2022 WL 16894869, at *3. The Court is not persuaded by Plaintiffs' mistaken argument that only commercial real estate rentals are governed by the FAA, nor by their citations to cases that involve one-time real estate sales and not leases. *See* ECF No. 36 at 23–25; *Russell*, 471 U.S. at 862 (finding the rental of real estate unquestionably affects commerce, and the local rental of an apartment unit is a part of that broad commercial market in rental properties); *A-1 A-Lectrician, Inc. v. Commonwealth Reit*, 943 F. Supp. 2d 1073, 1078 (D. Haw. 2013), *amended* (June 27, 2013) (distinguishing cases involving one-time real estate sales as inapplicable to whether the FAA governs real estate leases).

The Court also finds that FAA preemption applies, overriding California state arbitration laws, including California Civil Code section 1953. "In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotation marks and citation omitted). Thus, to the extent that California Civil Code section 1953 prohibits arbitration, it is preempted by the FAA. *See id.*; *AT&T Mobility LLC*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.").

### C. Enforcement

#### 1. Whether Defendants are entitled to enforcement

The Court finds Defendants may enforce the Arbitration Agreement, even though they are nonsignatories to the Lease. The Arbitration Agreement includes that it applies to "all claims by or against You, other Residents, Owner, and Owner's Agents." ECF No. 34-2 at 16. Plaintiffs argue that Greystar is not a signatory to the Lease, nor the Owner's

Agent because the lease agreement identifies Addy Hayes as the Owner's Agent. ECF No. 36 at 25; ECF No. 34-2 at 31. The Court notes that in the FAC, Plaintiffs repeatedly refer to Greystar as either the owner of the rental properties at issue, the property manager, or the agent of the Entity Defendants who own the rental properties. ECF No. 10 ¶¶ 30–36. The FAC includes that "GREYSTAR acts as an agent for each of the title owners, including creating, promulgating, and administering the security deposit policies and practices complained of herein. GREYSTAR, rather than the ENTITY DEFENDANTS, is tasked with administering tenant security deposits at each of the complexes identified herein." *Id.* ¶ 36. That Addy Hayes is also the Owner's Agent does not preclude Greystar from also being the Owner's Agent. The term "Owner's Agents" is plural, indicating that there may be more than one agent. The Court finds Defendants are Owner's Agents for purposes of the Arbitration Agreement.

Additionally, the Court finds Greystar has the right to compel arbitration under the doctrine of equitable estoppel. According to California contract law:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances:
> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 937 (N.D. Cal.), *aff'd,* 870 F.3d 1342 (Fed. Cir. 2017) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013)). In the FAC, Plaintiffs describe the relationship between Greystar, the apartment complexes, and the Entity Defendants as follows: "The above-referenced corporate structure amounts to a massive single integrated enterprise under California law because the entities have interrelated operations, common management, common control, and common ownership." The lease agreement contains clauses titled "Security Deposit,"

"Security Deposit Deductions and Other Charges," and "Deposit Return, Surrender, and Abandonment." ECF No. 34-2 at 19, 30. The Court finds the second circumstance of equitable estoppel explained above applies here. McGill, the signatory, alleges that Defendants and the Entity Defendants, through their interrelated operations, have illegally handled his security deposit. The security deposit is an obligation of the Lease, which specifies how much is to be paid, what can be deducted from it, and how it will be refunded. Although Plaintiffs argue that McGill's claims regarding the security deposit are purely statutory and do not rely on the Lease, the Court is not persuaded. Plaintiffs' claims regarding the security deposits are related to and intertwined with the security deposit obligations in the Lease, and the FAC references McGill's lease agreement and the terms regarding what may be withheld from the security deposit. ECF No. 10 ¶ 504; *see Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 217–18 (2009) (finding no equitable estoppel where, *inter alia*, the claims were "unrelated to any of the obligations in the operating agreement"). Accordingly, whether as the Owner's Agents or under the doctrine of equitable estoppel, the Court finds Defendants may assert the right to arbitrate.

### 2. Whether the Arbitration Agreement is unconscionable

California law provides both that "a court may refuse to enforce a provision of a contract if it determines that the provision was 'unconscionable at the time it was made'" and that "the party opposing arbitration must demonstrate procedural and substantive unconscionability." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting Cal. Civ. Code § 1670.5(a)). "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability [] [b]ut they need not be present in the same degree." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (first alteration in original) (internal quotation marks and citation omitted). Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted). Substantive unconscionability is

23cv1729-LL-VET

characterized by overly harsh or unduly oppressive terms and "requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.'*" *Sanchez*, 61 Cal. 4th at 911 (citation omitted). "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." *Id.* (citation omitted).

Plaintiffs argue that the Arbitration Agreement is procedurally unconscionable because it is an adhesion contract, there is unequal bargaining power of tenants to landlords, and McGill was never informed that he was being asked to agree to arbitration. ECF No. 36 at 27–28. Plaintiffs further argue that the Arbitration Agreement is substantively unconscionable because it carves out exclusions for claims that a landlord is likely to bring, it fails to require a neutral arbitrator, it fails to specify which arbitration rules govern, it is ambiguous about the costs of arbitration and who pays them, and it has no provision for discovery. *Id.* at 28–33.

The Court finds Plaintiffs have failed to show the Arbitration Agreement is unconscionable. Adhesion contracts are presented as "take it or leave it," but they are not automatically unenforceable as unconscionable. *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015). Significantly, McGill had the opportunity to opt out of the Arbitration Agreement, which negates any argument that agreeing was compulsory. It also negates any argument about unequal bargaining power between tenant and landlord. If McGill did not want to agree to arbitration, he was free to opt out. That he did not review the Lease documents and addenda when provided ample time to do so was a choice McGill made. Furthermore, Defendants had no obligation to specifically point out the Arbitration Agreement addenda. *Lim*, 8 F.4th at 1001 ("The party who drafts an agreement is under no obligation to highlight the arbitration clause of its contract, nor [i]s it required to specifically call that clause to [a counter-party]'s attention." (alteration in original) (internal quotation marks and citation omitted)). Nevertheless, the Arbitration Agreement was titled as such in bold capitalized type and was easily identifiable within the Lease. ECF No. 34-2 at 16. Plaintiffs have not demonstrated that procedural unconscionability applies here, which is sufficient to preclude the Court from refusing to enforce the

Arbitration Agreement pursuant to the doctrine of unconscionability. *See Lim*, 8 F.4th at 1000; *Sanchez*, 61 Cal. 4th at 910. The Court thus declines to consider the issue of substantive unconscionability.

Having found a valid Arbitration Agreement exists, that the dispute falls within the scope of the agreement, and that it is enforceable by Defendants as to McGill, the Court is required by the FAA to **GRANT** Defendants' Motion to Compel Arbitration as to McGill. *See Dean Witter Reynolds, Inc.*, 470 U.S. at 218; *Geier,* 824 F.3d at 799. The Court next considers whether it is necessary to stay this action while McGill's claims are arbitrated.

### D.      Stay

"Although it may be advisable to stay litigation among nonarbitrating parties pending the outcome of the arbitration, that decision is one left to the district court as a matter of its discretion to control its docket." *Hansber v. Ulta Beauty Cosms., LLC*, 640 F. Supp. 3d 947, 960 (E.D. Cal. 2022) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983)). "A district court's inherent, discretionary power to control its proceedings should promote economy of time and effort for itself, for counsel, and for litigants." *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 990 (N.D. Cal. 2016) (internal quotation marks and citation omitted).

The Court finds that staying this case pending arbitration for one named Plaintiff is not warranted. Plaintiffs argue that staying non-arbitrable class claims while McGill arbitrates his individual claims has no clear benefit and would only cause needless delay. ECF No. 36 at 35. The Court agrees. Defendants have not shown that the resolution of McGill's arbitrable claims on an individual basis would bind the Court in some way with respect to the non-arbitrable class claims. *See Congdon*, 226 F. Supp. 3d at 990–91. Nor have they shown that proceeding with the non-arbitrable claims here would negatively impact any parallel arbitration. *See id.* The Court finds a stay in this case would result in needless delay with no discernible benefit and would not promote efficiency. *See id.* (denying a motion to stay a case pending arbitration where there was no justification or benefit for delaying judicial resolution of non-arbitrable claims). Accordingly, the Court

23cv1729-LL-VET

**DENIES** Defendants' request to stay this action pending completion of McGill's arbitration proceedings.

## IV.   CONCLUSION

As set forth above, the Court **GRANTS** Defendants' Motion to Compel Arbitration as to Plaintiff Philip McGill but **DENIES** Defendants' request to stay this action pending arbitration.

**IT IS SO ORDERED**.

Dated:  July 19, 2024

_____

Honorable Linda Lopez
United States District Judge