UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE BROOKS, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>GREYSTAR REAL ESTATE PARTNERS, LLC;<br>GREYSTAR CALIFORNIA INC., et al.,<br><br>                              Defendants. | Case No.:  23cv1729-LL-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[ECF No. 35] |

Before the Court is a Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendants Greystar California, Inc. and Greystar Real Estate Partners, LLC (collectively "Greystar" or "Defendants"). ECF No. 35. Plaintiffs filed an Opposition to the Motion [ECF No. 39] and Defendants filed a Reply [ECF No. 42].[1] The Court finds this matter suitable for determination on the papers and

---

[1] Defendants also filed an Updated Request for Judicial Notice in support of Defendants' Motion to Strike and Motion to Dismiss the First Amended Complaint. ECF No. 35-2. Plaintiffs filed an opposition [ECF No. 39-1] and Defendants filed a reply [ECF No. 42]. Specifically, Defendants request judicial notice of (1) a minute order in a state court case;

without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the Motion to Strike and Motion to Dismiss.

## I.    BACKGROUND

This matter was initiated on September 18, 2023. ECF No. 1. In the First Amended Complaint ("FAC"), six named Plaintiffs sue Greystar and almost 480 different Defendants ("Entity Defendants") in a putative class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), claiming Greystar unlawfully withheld portions of their security deposits without providing required statutory disclosures. ECF No. 10 ¶ 6. Plaintiffs allege that Greystar "owns, controls and/or manages" hundreds of properties on behalf of Entity Defendants. *Id.* ¶¶ 29, 35. On January 19, 2024, Plaintiffs voluntarily dismissed the 478 Entity Defendants. ECF No. 30. On July 19, 2024, the Court granted Greystar's motion to compel arbitration as to named Plaintiff Philip McGill. ECF No. 44.

The following factual allegations are from the FAC.

Plaintiffs are former tenants of apartment complexes owned, controlled, and/or managed by Greystar. ECF No. 10 ¶¶ 13–19, 29–31. Greystar is the property manager for all apartment complexes in the FAC. *Id.* ¶ 29. The apartment complexes that are not

---

(2) lease agreement for Plaintiff Philip McGill; (3) docket of *Zeff v. Greystar California, Inc.*, No. 3:20-cv-07122-EMC (N.D. Cal.); (4) joint discovery brief in *Zeff* case; (5) amended claim in a state court case; and (6) notice of entry of judgment in a state court case. ECF No. 35-2 at 3–4. The Court **GRANTS** Defendants' Request for Judicial Notice as to the docket of the *Zeff* case but **DENIES** as to the remaining requests because the Court did not reference them, and they were not necessary to the Court's analysis. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting a court may take judicial notice of court filings and other matters of public record); *Mercado v. Audi of Am., LLC*, No. EDCV1802388JAKSPX, 2019 WL 9051000, at *3 (C.D. Cal. Nov. 26, 2019) (denying request for judicial notice of exhibits that were not directly referenced in the complaint nor necessary to the court's analysis).

owned by Greystar in whole or part are owned by parties referred to in the FAC as Entity Defendants. *Id.* ¶ 31. Greystar "sets all policies and procedures for the administration of security deposits, and oversees the administration of the security deposits, either by way of its ownership, property-management contracts, or both." *Id.* ¶¶ 32, 478–79.

Greystar directly owns, through various layers of limited liability corporations, seven of the apartment complexes in the FAC. *Id.* ¶¶ 47, 48, 49, 55, 56, 58, 74. Another twenty-one of the apartment complexes in the FAC may be "indirectly or beneficially owned, or controlled by Greystar as part of the same unitary enterprise" due to sharing the same officers and directors, principal addresses, registered agents for service of process, or the same employees and attorneys as the registered owners. *Id.* ¶¶ 46, 50–54, 57, 59–73. Greystar is the agent of the owners for the remaining 388 apartment complexes owned by Entity Defendants for the purposes of property management, including administration of tenant security deposits. *Id.* ¶¶ 78–465, 467.

Greystar, through its corporate policies and practices, "in bad faith, retains security deposits from tenants in violation of California law" and "conceals this bad faith withholding" by intentionally failing to provide mandatory disclosures required by California Civil Code section 1950.5. *Id.* ¶¶ 476, 520. Greystar also "has a pattern and practice of systemically either issuing payment beyond the 21-day deadline specified in California Civil Code section 1950.5(g), or sometimes, not at all." *Id.* ¶ 482.

The named Plaintiffs are former tenants of six different apartment complexes in California managed and/or operated by Greystar.[2] *Id.* ¶¶ 13–18, 23.

Plaintiff Ronnie Brooks was a tenant of Solaire Apartments in Temecula who submitted a $700 security deposit and moved out on May 1, 2023. *Id.* ¶¶ 15, 491. Greystar emailed a "summary of move out charges" and a "final account statement" that

---

[2] Plaintiff Philip McGill has been compelled to arbitrate his claims, so the Court omits his summary. *See* ECF No. 44.

indicated a $235 charge for a "cleaning fee," but provided no bills, invoices, receipts, or description of the work performed or hours and hourly rates. *Id.* ¶ 492.

Plaintiff Tiffany Vinson was a tenant at Gema Apartments in San Diego who provided a $400 security deposit and moved out on June 8, 2023. *Id.* ¶¶ 13, 495. Greystar emailed her a final account statement on July 6, 2023, after she requested it, which included a $240 charge for a cleaning fee and a $20 charge for "Final Utility Admin Fee & Move Out Fee," but no third-party bills, invoices, receipts, or description of hours and rates worked by any Greystar employees. *Id.* ¶ 496. Vinson disputed the charges citing the Civil Code but Greystar "ignored the correspondence." *Id.* ¶ 498.

Plaintiff Annie Castner was a tenant at Calypso Apartments and Lofts in Irvine who submitted a $400 security deposit and moved out on November 19, 2021. *Id.* ¶ 499. In June 2022, Castner received an email notice that she had a balance due of $184.42 to Greystar in addition to her security deposit, which she disputed. *Id.* ¶ 500. On September 21, 2022, Greystar emailed Castner a "Summary of Move Out Charges" that included $215.58 for "Damages – Sub-task – 6057172 – Floor – Carpet – Replace," $174.17 for "Damages – Sub-task – 6057171 – Walls Paint – Full," and $120 for "Damages – Sub-task – 6057170 – Cleaning Based on Full Unit – Full," but provided no vendor bills, invoices, receipts, or description of tasks performed and hours and rates worked by any Greystar employees. *Id.* ¶ 501.

Plaintiff Laura Seigel was a tenant at Breakwater Apartments in Huntington Beach who submitted a $2,437.50 security deposit and moved out on March 16, 2023. *Id.* ¶¶ 16, 507. On April 26, 2023, after several requests from Seigel regarding her security deposit, Greystar Assistant Community Manager informed Seigel that "the check was cut today" and would be sent to her forwarding address. *Id.* ¶ 513. She received a check for $723.59 from Greystar, which withheld from her security deposit $950 for "Rebuild Closet," $275 for "Full Paint ($44) Charge Back 50%," $120 for "Carpet Cleaning," and $230 for "Full Unit Cleaning 3x2," but Greystar did not include vendor documentation. *Id.* ¶¶ 514–15.

/ / /

Plaintiff Cherrelle Blount was a tenant at the Frederic apartments in Sacramento who submitted a security deposit of $3,220 and moved out on July 1, 2023. *Id.* ¶ 516. Blount received a final account statement in an envelope dated July 14, 2023 that indicated deductions of $190 for "Heavy clean + Trash out fridge," $91.16 for "Paint PM 200 0 EG EXTRA," and $195 for "Paint @ $39/hr 5 hours LABOR." *Id.* ¶¶ 517. However, Blount did not receive the balance of her security deposit, nor invoices or other documentation for the deductions. *Id.* ¶¶ 518–19.

Plaintiffs bring a claim for unlawful retention of residential security deposits in violation of California Civil Code section 1950.5 ("Section 1950.5") and a derivative claim for violation of the Unfair Competition Law, section 17200 of the California Business and Professions Code ("UCL"). *Id.* ¶¶ 527–33, 536–41.

Plaintiffs seek to bring a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) and propose the following class definitions: (1) "Unsubstantiated-Charges Class: All former tenants of Defendants whose leaseholds terminated between October 13, 2016 to present, and who had at least $125.00 of their security deposits retained for cleaning, repairs and/or replacements combined (the 'Unsubstantiated Charges Class')"; and (2) "Cleaning-Fee Class: All former tenants of Defendants whose leaseholds terminated between October 13, 2016, to present and from whom Defendants withheld a portion of their security deposits for flat-fee cleaning charges." *Id.* ¶¶ 521–22, 524. They also propose the following subclasses: (1) "In-House Charges Subclass: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted in-house repair or cleaning"; (2) "In-House Supplies Subclass: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted in-house supplies"; and (3) "Vendor Charges Subclass: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted third-party services or supplies." *Id.* ¶ 522.

/ / /

/ / /

/ / /

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is

not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *Desoto*, 957 F.2d at 658 (citation omitted).

### B.    Motion to Strike

Federal Rule of Civil Procedure 19 provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 19(f). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted). An "immaterial" matter "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd, on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (citation omitted). "Impertinent" statements "do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). "Scandalous" matter casts "a cruelly derogatory light on a party or other person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "[M]otions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019) (citation omitted).

### III.    DISCUSSION

Defendants seek to (1) dismiss Greystar Real Estate Partners, LLC as a defendant; (2) dismiss the FAC for failure to include necessary parties pursuant to Rules 12(b)(7)

/ / /

and 19; and (3) dismiss the FAC for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[3] ECF Nos. 35 at 3; 35-1 at 10–11, 31–32.

Defendants also seek to strike the following portions of the FAC: (1) all class claims and allegations for failure to include necessary parties and failure to plead facts meeting Rule 23's requirements; (2) class definitions because they are overbroad; (3) allegations regarding "flat cleaning fees" and civil penalties; and (4) all claims before September 2019 for exceeding the four-year statute of limitations. ECF Nos. 35 at 2–3; 35-1 at 16–31.

### A.    Greystar Real Estate Partners, LLC

Defendants argue that Plaintiffs' claims as to Greystar Real Estate Partners, LLC ("GREP") should be dismissed because the FAC "is void of any substantive or material allegations pertaining to GREP" and GREP does not own or manage any properties. ECF No. 35-1 at 33. Plaintiffs argue that the FAC contains detailed factual allegations about GREP. ECF No. 39 at 30.

The Court finds that Plaintiffs have made sufficient allegations pertaining to GREP in the FAC. Plaintiffs allege that GREP is the largest landlord in the United States with hundreds of thousands of residential units under management. ECF No. 10 ¶ 1. GREP and its affiliate Greystar California, Inc. own, control, and/or manage apartment complexes located in California and serve as the property manager for them. *Id.* ¶¶ 1, 21–33. Plaintiffs refer to GREP and Greystar California, Inc. collectively as "Greystar" and allege that they "uniformly manage[] and control[] the properties, set[] all policies and procedures for the administration of security deposits, and oversee[] the administration of the security deposits." *Id.* ¶¶ 1, 32. They further allege that GREP and Greystar California, Inc. uniformly fail—in bad faith—to provide tenants with the

---

[3] The term "Rule" in this Order refers to the Federal Rules of Civil Procedure unless otherwise stated.

documentation required by Section 1950.5 that substantiates amounts withheld from security deposits when tenants move out. *Id.* ¶ 5. Because the Court does not find the allegations are merely conclusory, unwarranted deductions of fact, or unreasonable inferences, the Court must accept these allegations as true in deciding a motion to dismiss, and finds Plaintiffs have sufficiently alleged GREP's role in the alleged violations. See *In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055. Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiffs' claims as to GREP.

### B.    Necessary and Indispensable Parties

Defendants contend that Entity Defendants—voluntary dismissed by Plaintiffs—are necessary parties per Rule 19(a) because they are the title owners and landlords of the subject apartment complexes who "contracted with tenants and paid for all cleaning and repair costs" and their absence requires dismissal per Rule 12(b)(7).[4] ECF No. 35-1 at 17–20, 31. Plaintiffs oppose, arguing that Entity Defendants are not necessary or indispensable parties. ECF No. 39 at 15–18.

Federal Rule of Civil Procedure 19 provides that a party is necessary if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
    (i) as a practical matter impair or impede the person's ability to protect the interest; or
    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Failure to join a necessary party under Rule 19 is grounds for a motion to dismiss. Fed. R. Civ. P. 12(b)(7). If the party is necessary and cannot be joined, "the court must determine whether, in equity and good conscience, the action should

---

[4] Defendants incorporate their arguments for striking Plaintiffs' class claims based on failure to join necessary parties into their argument for dismissal. ECF No. 35-1 at 31.

proceed among the parties or should be dismissed" because the party is indispensable. Fed. R. Civ. P. 19(b). To do so, the court must consider the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application. The moving party has the burden of persuasion in arguing for dismissal." *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) (citation omitted).

First, Defendants argue that Entity Defendants are necessary and indispensable because they are parties to the lease contracts with tenants. ECF No. 35-1 at 18, 31. Defendants further argue that this action involves contractual rights because it "seeks to enjoin enforcement of the security deposit provisions in the owners' leases and to return money that was paid to the owners pursuant to those leases." ECF No. 42 at 8. Defendants rely upon case law finding that all parties to a contract are necessary and indispensable in any action challenging the contract's validity or its terms, enjoining its performance, or determining rights and obligations of the contract. ECF No. 35-1 at 18, 31–32; *see, e.g.*, *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." (citations omitted)).

The Court does not find Entity Defendants are necessary parties based solely on their status as parties to the lease agreements with Plaintiffs. Unlike the cases relied on by Defendants, Plaintiffs do not seek to enjoin, invalidate, or interpret the contracts, or allege breach of contract. *See Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375

F.3d 861, 881 (9th Cir. 2004) (finding absent party was not necessary based solely on its interest as a contractual party because the plaintiff's suit was "not 'an action to set aside . . . a contract,' *Dawavendewa,* 276 F.3d at 1156 (quoting *Lomayaktewa,* 520 F.2d at 1325), an 'attack on the terms of a negotiated agreement,' *Clinton,* 180 F.3d at 1088, or 'litigation seeking to decimate [a] contract.' *Dawavendewa,* 276 F.3d at 1157" (quoting *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1156–57 (9th Cir. 2002); *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999))); *see also Plush Lounge Las Vegas, LLC v. Hotspur Resorts Nevada, Inc.*, No. CV 06-2626 FMC (TLX), 2006 WL 8434770, at *7 (C.D. Cal. June 22, 2006) ("Here, GP2 is not a necessary party by virtue of its status as a party to the lease between Defendant and GP2, nor the Management Agreement between GP2 and Plaintiff."). Instead of attacking the lease agreements, Plaintiffs seek compliance with Section 1950.5. If Plaintiffs are successful, the lease agreements will not be invalidated, nor any of their terms, and will remain legally binding. *See Disabled Rts. Action Comm.*, 375 F.3d at 881.

Next, Defendants contend that Entity Defendants are necessary and indispensable because "the Court cannot accord complete relief among the remaining parties." ECF No. 35-1; *see also* Fed. R. Civ. P. 19(a)(1)(A). In support, Defendants argue that if a tenant seeks to enjoin the enforcement of a lease or a term of the lease, it is the property owner—such as Entity Defendants—who will be enjoined, not the owner's agent—such as Greystar. ECF No. 35-1 at 19. As explained above, that argument fails because this action does not seek to enjoin the enforcement of the leases or their terms, so Entity Defendants will not be enjoined in this action by their status as parties to the lease agreements. *See Disabled Rts. Action Comm.*, 375 F.3d at 881. Defendants also argue that one of Plaintiffs' demands for relief is for a declaration that all "outstanding balances alleged owed by the Plaintiff Class members are extinguished," but that those are debts owed to the absent Entity Defendants, not Greystar. *Id.*; ECF No. 10 at 89.

The Court finds that complete relief among the current parties cannot be achieved due to one of Plaintiff's demands for relief. In the FAC, Plaintiffs allege that Defendants

act "as an agent for each of the title owners, including creating, promulgating, and administering the security deposit policies and practices complained of herein." ECF No. 10 ¶ 36. Plaintiffs also allege that Entity Defendants "acquire the properties, turn over substantially all property management functions to [Defendants], and receive the revenue stream from the Apartment Complexes, less [Defendants'] fee." *Id.* ¶ 40. By this description, for the apartment complexes that are not owned by Greystar, Entity Defendants own the debts owed by tenants, although Defendants administer the billing and collection of them. "Outstanding balances" allegedly owed by Plaintiffs could include charges of unpaid rent, as well as the disputed cleaning or repair fees. *See* Cal. Civ. Code § 1950.5(b)(1)–(4). To the extent Plaintiffs seek relief from the absent Entity Defendants, they are necessary parties because Greystar cannot give Plaintiffs something that does not belong to them. *See M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, 202 Cal. App. 4th 1509, 1527 (2012) ("[A]ppellants could not be required to return something that did not belong to them . . . ."). Considering the factors for whether a party is indispensable, Entity Defendants would be prejudiced by any judgment in their absence that deprived them of something that belonged to them; depriving them of their property in their absence cannot be lessened or avoided, unless Plaintiffs amend their FAC to demand only relief that Greystar can provide; judgment rendered in their absence that did not include their property would not be adequate if Plaintiffs require the outstanding balances to be extinguished; and Plaintiffs could pursue their claims individually in small claims court if this action was dismissed for nonjoinder. *See* Fed. R. Civ. P. 19(b)(1)–(4). With more factors weighing toward indispensability, the Court finds that Entity Defendants are indispensable if Plaintiffs seek a remedy that only the absent Entity Defendants can provide, which is injunctive relief to extinguish outstanding balances. Because Entity Defendants are necessary and indispensable, the Court grants the Motion to Dismiss without prejudice, for failure to join required parties pursuant to Rule 12(b)(7). Plaintiffs may amend the FAC to seek only relief that Greystar can provide to correct this deficiency.

### C.    Section 1950.5 Claim and UCL Claim

Defendants argue that Plaintiffs' Section 1950.5 claim should be dismissed because they fail to allege a violation by Defendants. ECF No. 35-1 at 32. Because Plaintiffs' UCL claim is derivative of the Section 1950.5 claim, Defendants argue that it also must be dismissed. *Id.* Plaintiffs counter that Defendants' assertions are irrelevant at this stage and wrong. ECF No. 39 at 30.

Plaintiffs reference and describe the California statute that governs residential tenants' security deposits in the FAC. Section 1950.5(b) of the California Civil Code permits only the following charges to be withheld from a residential tenant's security deposit: "(1) rent in arrears; (2) repairs exclusive of wear and tear; (3) cleaning required to bring the leasehold back to the condition it was in when the tenant accepted the tenancy; and (4) 'to remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances' if provided for in the lease." ECF No. 10 ¶ 484. Section 1950.5(g) provides that for any deductions greater than $125.00 from a security deposit, they must be properly documented as follows:

> a. No later than 21 calendar days after the tenant vacates, the landlord "shall furnish the tenant, by personal delivery or by first-class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security, and shall return any remaining portion of the security to the tenant."
> b. With respect to charges for outside vendors, the "landlord shall provide the tenant a copy of the bill, invoice, or receipt supplied by the person or entity performing the work." If a bill, invoice, or receipt is not available within 21 days of the tenant vacating, the landlord must provide a good faith estimate and must provide the bill, invoice, or receipt promptly upon the same becoming available. GREYSTAR systematically fails to provide vendor documentation as required.
> c. With respect to in-house service charges, "the itemized statement shall reasonably describe the work performed. The itemized statement shall include the time spent and the reasonable hourly rate charged."
> d. For supplies or materials used in repair or cleaning, "the landlord shall provide a copy of the bill, invoice, or receipt. If a particular material or

supply item is purchased by the landlord on an ongoing basis, the landlord may document the cost of the item by providing a copy of a bill, invoice, receipt, vendor price list, or other vendor document that reasonably documents the cost of the item used in the repair or cleaning of the unit."

*Id.* ¶ 486.

The Court finds Plaintiffs have sufficiently pleaded claims regarding violations of Section 1950.5 and the UCL for which relief may be granted. The FAC contains allegations that Plaintiffs were tenants in apartment complexes for which Defendants controlled the administration of security deposits, and Defendants violated Section 1950.5 in bad faith by retaining all or part of their security deposits after they moved out without providing the required documentation to substantiate any amounts withheld, charging tenants a flat cleaning fee without regard to the condition of the unit or the actual and reasonably necessary charges incurred, and systemically issuing payments beyond the twenty-one-day deadline or not at all. ECF No 10 ¶¶ 3–5, 32, 476–82, 487–90, 520, 527–33. Because Plaintiffs sufficiently pleaded violations of Section 1950.5, their derivative UCL claim incorporating the same allegations is also sufficiently pleaded. Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiffs' Section 1950.5 claim and UCL claim.

### D.  Class Allegations

Defendants move to strike class allegations, arguing that the facts alleged fail to meet Rule 23's requirements of commonality, typicality, adequacy, predominance, superiority, and manageability for class actions. ECF No. 25-1 at 22–29; *see also* Fed. R. Civ. P. 23(a), (b)(3). Plaintiffs argue that a motion to strike class allegations at this early stage—prior to discovery—is premature. ECF No. 39 at 18–19. Plaintiffs further argue that the FAC satisfies the requirements of Rule 23 for certifying a class action. *Id.* at 21–27.

According to Rule 23(c), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Courts read this as "a mechanism

14

for exercising defective class allegations before discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). "[W]hile there is little authority on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal quotation marks and citations omitted). However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). The Ninth Circuit has also held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010).

The Court finds that the question of class suitability is more appropriately resolved in a motion for class certification rather than a motion to strike. *See Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 996 (S.D. Cal. 2022); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d at 615. Therefore, "so long as class action allegations address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent, the court should find that the allegations are sufficient to survive a motion to strike." *Rosales*, 882 F. Supp. 2d at 1179 (internal quotation marks and citation omitted).

The Court finds Plaintiffs' class action allegations are sufficient to survive a motion to strike. The FAC alleges that the putative class action meets the four elements of Rule 23(a)—numerosity, commonality, typicality, adequacy—as well as the alternative requirements of Rule 23(b)(3)—predominance, superiority, and manageability. ECF No. 10 ¶¶ 521–22; *see also* Fed. R. Civ. P. 23(b). The class allegations also relate to the subject matter of the litigation, and Defendants do not argue that they are redundant,

immaterial, or impertinent. Accordingly, the Court denies the Motion to Strike the class allegations. *See Rosales*, 882 F. Supp. 2d at 1179.

Although the Court finds that a Motion to Strike class suitability in general is premature, Defendants also make discrete arguments to strike other narrower parts of the FAC. The Court will address each in turn.

### E.    Class Definition

Defendants contend that the Court should strike Plaintiffs' class definition for being overbroad because it includes tenants subject to arbitration and class action waiver agreements. ECF No. 35-1 at 20–21.

The Court finds this narrow issue regarding the class definition is not premature. The Court previously granted Defendants' motion to compel arbitration as to named Plaintiff Philip McGill. ECF No. 44. Because other tenants may have signed similar arbitration agreements with class action waiver clauses, it is obvious from the pleadings that a class definition that does not exclude tenants who are subject to arbitration agreements is overbroad and cannot proceed on a classwide basis. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 160; *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018) (reversing class certification order for a class that included members who entered into arbitration agreements with class action waivers). However, Plaintiffs can amend the class definition to exclude members subject to arbitration and class action waivers. Accordingly, the Court grants the Motion to Strike the class definition with leave to amend.

### F.    Flat Cleaning Fee

Defendants argue that all allegations regarding a "flat cleaning fee" should be struck because Plaintiffs do not allege that they were charged a flat cleaning fee, which makes the alleged flat cleaning fees charged to absent class member "redundant, immaterial, impertinent, or scandalous" per Rule 12(f). ECF No. 35-1 at 29–30.

The Court finds Defendants misunderstand Plaintiffs' theory regarding a flat cleaning fee. The FAC contains the term "flat" in connection with cleaning fees only

twice. First, Plaintiffs propose a "Cleaning-Fee Class" defined as "[a]ll former tenants of Defendants whose leaseholds terminated between October 13, 2016, to present and from whom Defendants withheld a portion of their security deposits for flat-fee cleaning charges." ECF No. 10 ¶ 522. Second, Plaintiffs allege that Defendants "charged a flat cleaning fee without regard to the condition of the unit or the actual and reasonably necessary charges incurred." *Id.* ¶ 530. Elsewhere, Plaintiffs allege "GREYSTAR's cleaning fee is an unlawful 'standard charge,' not reasonably necessary, and not indicative of any work actually performed on the vacated leasehold" and "the charge is a per se violation of section 1950.5." *Id.* ¶ 493. Defendants interpret "flat cleaning fee" as the *same* fee for all tenants. *See* ECF No. 35-1 at 30.

Upon review of the FAC as a whole and all allegations regarding a cleaning fee, the Court finds that "flat cleaning fee" is clearly a *set* or *standard* fee charged "without regard to the condition of the unit or the actual and reasonably necessary charges incurred." *See, e.g.*, ECF No. 10 ¶ 490 ("In addition, in further violation of the Civil Code section 1950.5(g), GREYSTAR frequently charges former tenants' standard 'cleaning fees' without regard to the condition of the apartment, and, without the required vendor provided invoice nor stated hours and rate for any work performed by GREYSTAR employees."). Additionally, a flat, set, or standard fee can be the same as to all tenants but does not have to be; the fee is one that does not take into account whether or how much cleaning was reasonably necessary so different tenants may be charged different "flat" or "standard" fees. Accordingly, the Court finds Plaintiffs have alleged they were charged a flat cleaning fee and denies Defendants' Motion to Strike all allegations regarding a "flat cleaning fee."

## G. Civil Penalties

Defendants argue that Plaintiffs' request for civil penalties pursuant to California Civil Code section 3345, which allows treble damages for the benefit of senior citizens, disabled persons, or veterans, should be struck from the FAC because Plaintiffs do not

/ / /

allege that they are senior citizens, disabled, or veterans. ECF No. 35-1 at 30. Plaintiffs do not address this argument.

The Court finds Defendants' Motion to Strike the civil penalties is not premature. Plaintiffs did not oppose Defendants' argument, and the Court agrees with Defendants that there are no allegations that any Plaintiffs are senior citizens, disabled, or veterans or why treble damages pursuant to California Civil Code 3345 are warranted. Unlike the court in *Whittlestone* that found Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law, Defendants argue that there are no allegations that support Plaintiffs' demand for relief of treble civil penalties under section 3345. *See Whittlestone, Inc.*, 618 F.3d at 974–75.

The Court finds it is obvious from the pleadings that penalties pursuant to section 3345 cannot be awarded to the class when the FAC is devoid of any allegations that such damages are warranted. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 160. A prayer for relief without allegations to support it is immaterial for having no relationship to the claims and impertinent for not pertaining to the issues in question. *See Fantasy, Inc.*, 984 F.2d at 1527. Plaintiffs did not oppose the argument so the Court finds amendment would be futile. *See Desoto*, 957 F.2d at 658 (citation omitted). Accordingly, the Court grants the Motion to Strike the civil penalties pursuant to section 3345 of the California Civil Code without leave to amend.

### H.    Class Period

Defendants contend that allegations regarding claims prior to September 18, 2019 should be struck because the statute of limitations is four years under section 17208 of the California Business and Professions Code, and this matter was initiated on September 18, 2023. ECF No. 35-1 at 30; *see also* ECF No. 1. Plaintiffs agree that the applicable statute of limitations is four years, but argue that a class period beginning October 13, 2016 is appropriate because "a pending class action tolls the limitations period for absent class members" pursuant to *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974). ECF No. 39 at 28–29: *see also* ECF No. 10 ¶ 522. Plaintiffs

contend that in the pending class action matter of *Zeff v. Greystar California, Inc.*, No. 20-cv-07122-EMC (N.D. Cal. initiated Oct. 23, 2020), Zeff abandoned his security-deposit claims on June 22, 2023 when he moved for class certification only on his claim of unlawful late fees, which tolled the statute of limitations for absent class members who held security deposit claims against Greystar from October 13, 2016 until he abandoned the claims on June 22, 2023. ECF No. 39 at 28–29; *see also* ECF No. 10 ¶ 522 & n.28. Plaintiffs claim that when they filed this action on September 18, 2023, it again tolled the statute of limitations for those absent *Zeff* class members, "less the 84 days from when Zeff abandoned the claims." ECF No. 39 at 29.

The Court finds the Motion to Strike the Plaintiffs' proposed class period is not premature. The arguments for and against this issue will not benefit from discovery and resolving this discrete issue will further the purpose of "avoid[ing] the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc.*, 984 F.2d at 1527 (citation omitted).

The Court finds Plaintiffs' proposed class period exceeds the statute of limitations and *American Pipe* tolling is not applicable here. In *American Pipe*, the U.S. Supreme Court held that "at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Am. Pipe & Const. Co.*, 414 U.S. at 552–53. Subsequent courts have clarified that *American Pipe* tolls the statute of limitations for members of the failed suit to allow them—as individual plaintiffs—to intervene in or join an existing suit, or bring an individual suit after class certification is denied. *China Agritech v. Michael H. Resh*, 584 U.S. 732, 735 (2018) (citation omitted). In *China Agritech*, the Supreme Court revisited the *American Pipe* tolling rule and held that upon denial of class certification, "a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action," may not "commence a

class action anew beyond the time allowed by the applicable statute of limitations." *Id.* at 735–36. Therefore, *American Pipe* tolling applies to individual claims, not class claims, and it "does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." *Id.* at 740. Plaintiffs seek to toll class claims to the earlier-filed *Zeff* class action, but that is not permitted. *See id.* (finding *American Pipe* permits tolling of individual claims, but not untimely successive class claims).

Plaintiffs' reliance on *Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454 (2015) to allow tolling for class claims is misplaced. *See* ECF No. 39 at 29. *Falk* was decided before *China Agritech*, and courts have recognized that *Falk* relied on cases that have been abrogated by *China Agritech*. *Fierro v. Landry's Rest. Inc.*, 32 Cal. App. 5th 276, 297 (2019) (declining to follow *Falk* because "*Falk* relied principally on *Yang* and *Catholic Social Services* to allow tolling of the statutes of limitations on the otherwise untimely class claims; however, *Yang and Catholic Social Services are no longer good law*."). "Thus, upon denial of class certification in an action, a putative class member may not commence the same class claim in a new action beyond the time allowed by the limitation period applicable to the class claim." *Fierro*, 32 Cal. App. 5th at 297. The Court finds the only class claims that are timely are those that accrued within the four-year statute of limitations period preceding the filing of Plaintiffs' complaint on September 18, 2023. *See id.*; *see also China Agritech*, 584 U.S. at 740. Accordingly, the Court grants Defendants' Motion to Strike the proposed class period with leave to amend.

## IV.    CONCLUSION

As set forth above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss and Motion to Strike as follows:

1.    The Court **DENIES** the Motion to Dismiss Plaintiffs' claims as to GREP.

2.    The Court **GRANTS** the Motion to Dismiss the FAC without prejudice, for failure to join required parties pursuant to Rule 12(b)(7). Plaintiffs may amend the FAC to seek only relief that Greystar can provide to correct this deficiency.

/ / /

3. The Court **DENIES** the Motion to Dismiss Plaintiffs' Section 1950.5 claim and UCL claim.

4. The Court **DENIES** the Motion to Strike the class allegations.

5. The Court **GRANTS** the Motion to Strike the class definition with leave to amend.

6. The Court **DENIES** the Motion to Strike all allegations regarding a "flat cleaning fee."

7. The Court **GRANTS** the Motion to Strike the civil penalties pursuant to section 3345 of the California Civil Code without leave to amend.

8. The Court **GRANTS** Defendants' Motion to Strike the proposed class period with leave to amend.

9. Plaintiffs may file a Second Amended Complaint on or before **October 3, 2024** to correct the deficiencies noted in this Order and to remove any allegations that are no longer applicable due to Plaintiffs' dismissal of the Entity Defendants. Plaintiffs shall abide by the undersigned's Civil Chambers Rules, section 3.K., requiring that "[a]ny amended pleading—not just those accompanying a motion for leave to amend—must be accompanied by a redline [version] showing how the amended pleading differs from the operative pleading."

**IT IS SO ORDERED**.

Dated:  September 26, 2024

Honorable Linda Lopez
United States District Judge