1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11  RONNIE BROOKS, et al.,                    Case No.:  23cv1729-LL-VET

12                              Plaintiffs,

13  v.                                        **ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
14  GREYSTAR REAL ESTATE                      MOTION TO DISMISS AND
    PARTNERS, LLC;                            MOTION TO STRIKE SECOND
15  GREYSTAR CALIFORNIA INC., et al.,         AMENDED COMPLAINT**

16                              Defendants.   [ECF No. 52]

17

18

19        Before the Court is a Motion to Dismiss and Motion to Strike Plaintiffs' Second

20  Amended Complaint filed by Defendants Greystar California, Inc. and Greystar Real

21  Estate Partners, LLC (collectively "Greystar" or "Defendants"). ECF No. 52. Plaintiffs

22  filed an Opposition to the Motion [ECF No. 53] and Defendants filed a Reply

23  [ECF No. 54].[1] The Court finds this matter suitable for determination on the papers and

24  _____

25

26  [1] Defendants also filed a Request for Judicial Notice in support of Defendants' Motion to
    Dismiss and Motion to Strike the Second Amended Complaint. ECF No. 52-2. Plaintiffs
27  filed an opposition [ECF No. 53-1], and Defendants filed a reply [ECF No. 54-1].
    Specifically, Defendants request judicial notice of (1) lease agreements for named
28

1

without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss and Motion to Strike.

## I.    BACKGROUND

This matter was initiated on September 18, 2023. ECF No. 1. On July 19, 2024, the Court granted Greystar's motion to compel arbitration as to named Plaintiff Philip McGill. ECF No. 44.

On September 26, 2024, the Court granted in part an denied in part Defendants' motion to strike and motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). ECF No. 48.

On October 3, 2024, Plaintiffs filed a Second Amended Complaint ("SAC"). ECF No. 49. In the SAC, six named Plaintiffs sue Greystar in a putative class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), claiming, *inter alia*, Greystar unlawfully withheld portions of tenants' security deposits without providing required statutory disclosures. ECF No. 49 ¶¶ 6, 7. Plaintiffs allege that Greystar "owns, controls and/or manages" hundreds of properties on behalf of the owners, referred to as Single Purpose Entities ("SPEs"). *Id.* ¶¶ 29, 31, 35.

The following factual allegations are from the SAC.

Plaintiffs are former tenants of apartment complexes owned, controlled, and/or managed by Greystar. *Id.* ¶¶ 13–19, 29–31. Greystar is the property manager for all apartment complexes in the FAC. *Id.* ¶ 29. The apartment complexes that are not owned

---

Plaintiffs and (2) court filings containing discovery materials in *Zeff v. Greystar California, Inc.*, No. 3:20cv07122-EMC (N.D. Cal.). ECF No. 52-2 at 3–4. The Court **DENIES** Defendants' Request for Judicial Notice because they were not necessary to the Court's analysis and the Court did not reference the materials. *See Mercado v. Audi of Am., LLC*, No. EDCV1802388JAKSPX, 2019 WL 9051000, at *3 (C.D. Cal. Nov. 26, 2019) (denying request for judicial notice of exhibits that were not necessary to the court's analysis).

by Greystar in whole or part are owned by parties referred to in the SAC as SPEs. *Id.* ¶ 31. Greystar "sets all policies and procedures for the administration of security deposits, and oversees the administration of the security deposits, either by way of its ownership, property-management contracts, or both." *Id.* ¶¶ 32, 474–75.

Greystar directly owns, through various layers of limited liability corporations, seven of the apartment complexes described in the SAC. *Id.* ¶¶ 45, 46, 47, 53, 54, 56, 72. Another twenty-one of the apartment complexes in the SAC may be "indirectly or beneficially owned, or controlled by Greystar as part of the same unitary enterprise" due to sharing the same officers and directors, principal addresses, registered agents for service of process, or the same employees and attorneys as the registered owners. *Id.* ¶¶ 44, 48–52, 55, 57–71. Greystar is the agent of the owners for the remaining 389 apartment complexes owned by SPEs for the purposes of property management, including administration of tenant security deposits. *Id.* ¶¶ 73–464.

Greystar, through its corporate policies and practices, "in bad faith, retains security deposits from tenants in violation of California law" and "conceals this bad faith withholding" by intentionally failing to provide mandatory disclosures required by California Civil Code section 1950.5. *Id.* ¶ 472. Greystar also "has a pattern and practice of systemically either issuing payment beyond the 21-day deadline specified in California Civil Code section 1950.5(g), or sometimes, not at all." *Id.* ¶ 478.

The named Plaintiffs are former tenants of six different apartment complexes in California managed and/or operated by Greystar.[2] *Id.* ¶¶ 13–18, 23.

Plaintiff Ronnie Brooks was a tenant of Solaire Apartments in Temecula who submitted a $700 security deposit and moved out on May 1, 2023. *Id.* ¶¶ 15, 487. Greystar emailed a "summary of move out charges" and a "final account statement" that

---

[2] Plaintiff Philip McGill has been compelled to arbitrate his claims, and there is no summary of his situation in the SAC. *See* ECF No. 44; ECF No. 49 ¶ 14 & n.3.

indicated a $235 charge for a "cleaning fee," but provided no bills, invoices, receipts, or description of the work performed or hours and hourly rates. *Id.* ¶ 488.

Plaintiff Tiffany Vinson was a tenant at Gema Apartments in San Diego who provided a $400 security deposit and moved out on June 8, 2023. *Id.* ¶¶ 13, 491. Greystar emailed her a final account statement on July 6, 2023, after she requested it, which included a $240 charge for a cleaning fee and a $20 charge for "Final Utility Admin Fee & Move Out Fee," but no third-party bills, invoices, receipts, or description of hours and rates worked by any Greystar employees. *Id.* ¶ 492. Vinson disputed the charges citing the Civil Code but Greystar "ignored the correspondence." *Id.* ¶ 494.

Plaintiff Annie Castner was a tenant at Calypso Apartments and Lofts in Irvine who submitted a $400 security deposit and moved out on November 19, 2021. *Id.* ¶¶ 17, 495. In June 2022, Castner received an email notice that she had a balance due of $184.42 to Greystar in addition to her security deposit, which she disputed. *Id.* ¶ 496. On September 21, 2022, Greystar emailed Castner a "Summary of Move Out Charges" that included $215.58 for "Damages – Sub-task – 6057172 – Floor – Carpet – Replace," $174.17 for "Damages – Sub-task – 6057171 – Walls Paint – Full," and $120 for "Damages – Sub-task – 6057170 – Cleaning Based on Full Unit – Full," but provided no vendor bills, invoices, receipts, description of tasks performed, or hours and rates worked by any Greystar employees. *Id.* ¶ 497.

Plaintiff Laura Seigel was a tenant at Breakwater Apartments in Huntington Beach who submitted a $2,437.50 security deposit and moved out on March 16, 2023. *Id.* ¶¶ 16, 499. On April 26, 2023, after several requests from Seigel regarding her security deposit, Greystar Assistant Community Manager informed Seigel that "the check was cut today" and would be sent to her forwarding address. *Id.* ¶ 506. She received a check for $723.59 from Greystar, which withheld from her security deposit $950 for "Rebuild Closet," $275 for "Full Paint ($44) Charge Back 50%," $120 for "Carpet Cleaning," and $230 for "Full Unit Cleaning 3x2," but Greystar did not include vendor documentation. *Id.* ¶¶ 507–08.

///

Plaintiff Cherrelle Blount was a tenant at the Frederic apartments in Sacramento who submitted a security deposit of $3,220 and moved out on July 1, 2023. *Id.* ¶¶ 18, 509. Blount received a final account statement in an envelope dated July 14, 2023 that indicated deductions of $190 for "Heavy clean + Trash out fridge," $91.16 for "Paint PM 200 0 EG EXTRA," and $195 for "Paint @ $39/hr 5 hours LABOR." *Id.* ¶¶ 510. However, Blount did not receive the balance of her security deposit, nor invoices or other documentation for the deductions. *Id.* ¶¶ 511–12.

Plaintiffs bring a claim for unlawful retention of residential security deposits in violation of California Civil Code section 1950.5 ("Section 1950.5") and a derivative claim for violation of the Unfair Competition Law, section 17200 of the California Business and Professions Code ("UCL"). *Id.* ¶¶ 518–27, 528–35.

Plaintiffs seek to litigate their claims as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) and propose the following class definitions:

> **Unsubstantiated-Charges Class**: All former tenants of Defendants whose leaseholds terminated between September 18, 2019 to present, and who had at least $125.00 of their security deposits retained for cleaning, repairs and/or replacements combined, excluding those tenants who leases contained arbitration provisions including class action waivers.
>
> a.    **In-House Charges Subclass**: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted in-house repair or cleaning.
>
> b.    **In-House Supplies Subclass**: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted in-house supplies.
>
> c.    **Vendor Charges Subclass**: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted third-party services or supplies.
>
> d.    **Cleaning-Fee Class**: All former tenants of Defendants whose leaseholds terminated between September 18, 2019 to present and from whom Defendants withheld a portion of their security deposits for flat-fee cleaning charges.
>
> e.    **Unauthorized Deduction Class**: All former tenants of Defendants whose leaseholds terminated between September 18, 2019 to present that had any portion of their security deposit used for any charge other than rent in arrears, cleaning or repairing of their vacated unit.

*Id.* ¶¶ 514–15, 517.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *Desoto*, 957 F.2d at 658 (citation omitted).

## B.      Motion to Strike

Federal Rule of Civil Procedure 12 provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted). An "immaterial" matter "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (citation omitted). "Impertinent" statements "do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). "Scandalous" matter casts "a cruelly derogatory light on a party or other person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "[M]otions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019) (citation omitted).

## III.   DISCUSSION

Defendants argue that the entire SAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join necessary and indispensable parties under

23cv1729-LL-VET

1 Federal Rule of Civil Procedure 19. ECF No. 52-1 at 7. Alternatively, Defendants argue

2 that Plaintiffs' new allegations of an "Unauthorized Deduction Class" should be stricken

3 from the SAC. *Id.* at 7.

4     **A.    Necessary and Indispensable Parties**

5     Defendants contend that the SPEs are necessary and indispensable parties because

6 Plaintiffs' request for relief is not possible in their absence. ECF No. 52-1 at 7. Plaintiffs

7 oppose, arguing that joinder is not necessary, that they do not seek to hold the SPEs liable

8 and do not seek recovery against the SPEs, and that the Court previously considered and

9 rejected an identical argument by Defendants when they sought to dismiss the First

10 Amended Complaint. ECF No. 53 at 14, 18.

11     Federal Rule of Civil Procedure 19 provides that a party is necessary if:

12   (A) in that person's absence, the court cannot accord complete relief among
13   existing parties; or
  (B) that person claims an interest relating to the subject of the action and is
14   so situated that disposing of the action in the person's absence may:
15     (i) as a practical matter impair or impede the person's ability to
protect the interest; or
16     (ii) leave an existing party subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations because of the
17   interest.

18 Fed. R. Civ. P. 19(a)(1). Failure to join a necessary party under Rule 19 is grounds for a

19 motion to dismiss. Fed. R. Civ. P. 12(b)(7).

20     If the party is necessary and cannot be joined, "the court must determine whether,

21 in equity and good conscience, the action should proceed among the parties or should be

22 dismissed" because the party is indispensable. Fed. R. Civ. P. 19(b). To do so, the court

23 must consider the following factors:

24   (1) the extent to which a judgment rendered in the person's absence might
prejudice that person or the existing parties;
25   (2) the extent to which any prejudice could be lessened or avoided by:
26     (A) protective provisions in the judgment;
    (B) shaping the relief; or
27     (C) other measures;

28

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application. The moving party has the burden of persuasion in arguing for dismissal." *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) (citation omitted).

Defendants argue that joinder of the SPEs is required because of the form of relief Plaintiff seeks, but the Court does not agree. Defendants contend that the SPEs are necessary because Plaintiffs seek the return of the entirety of all Plaintiffs' and Plaintiff Class's security deposits, which they claim are owned by the SPEs.[3] ECF No. 52-1 at 16–17; ECF No. 49 at 80. According to Defendants, this ownership means that the SPEs have "an interest relating to the subject of the action" and that the "court cannot accord complete relief" pursuant to Rule 19. ECF No. 52-1 at 16–17. The Court is not persuaded. First, security deposits are owned by tenants—not the SPEs—and held by landlords. Cal. Civ. Code § 1950.5(d); *In re Choy*, 569 B.R. 169, 183–84 (Bankr. N.D. Cal. 2017) ("California Civil Code § 1950.5(d) requires that a residential landlord 'hold' a tenant's security deposit."); *Small Prop. Owners of San Francisco v. City & Cnty. of San Francisco*, 141 Cal. App. 4th 1388, 1398 n.4 (2006) (noting that landlords do not own the security deposits). Second, the SPEs have not claimed an interest in this action.

---

[3] Defendants misstate and mischaracterize the Court's findings in its September 26, 2024 order that granted in part and denied in part Defendants' motion to strike and motion to dismiss the First Amended Complaint ("FAC Order") by claiming (1) "the Court already found" that "the SPEs own Plaintiffs' security deposits" and (2) "the Court already held that the former 'entity defendants' (now the 'SPEs') are necessary parties under Rule 19." ECF Nos. 52-1 at 17; 54 at 7. First, the Court found that the property owners "own the debts owed by tenants, although Defendants administer the billing and collection of them" and did not include security deposits in that description. ECF No 48 at 12. Second, the Court found the SPEs are necessary and indispensable only to the extent that Plaintiffs sought injunctive relief to extinguish outstanding balances. *Id.* at 12.

23cv1729-LL-VET

*See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (finding joinder is not necessary where the absent party does not claim an interest in the matter). For these reasons, the Court does not find an absent party claims an interest relating to the subject of the action, which defeats the second prong of finding a party "necessary." Furthermore, Plaintiffs allege that *Defendants'* actions violate statutory rules regarding security deposits, which necessitates their return.

Section 1950.5 of the California Civil Code governs the use and return of security deposits for rental properties, which the Supreme Court of California described as follows:

> From the plain language of the statute we conclude that a landlord (1) must return a tenant's security deposit within the specified period after the termination of the tenancy, (2) may retain all or part of the security deposit as compensation for unpaid rent, repairs, and cleaning, and (3) must provide a written accounting of any amounts retained within the specified period. If, within the specified period, the landlord has not provided the tenant with a written accounting of the portion of the security deposit he plans to retain, the right to retain all or part of the security deposit under section 1950.5, subdivision (f), has not been perfected, and he must return the entire deposit to the tenant.

*Granberry v. Islay Invs.*, 9 Cal. 4th 738, 744–45 (1995).

Plaintiffs sufficiently allege that complete relief can be accorded among the existing parties. Plaintiffs allege in the SAC that Greystar, "rather than the SPEs, is tasked with administering tenant security deposits at each of the complexes identified herein." ECF No. 49 ¶ 36. Plaintiffs further allege that Defendants violated Section 1950.5 in bad faith by, *inter alia*, retaining all of part of their security deposits after they moved out without providing the required documentation to substantiate any amounts withheld, which requires the return of their entire security deposits. *Id.* ¶¶ 3–5, 472–76, 483–85. Therefore, if Plaintiffs prevail as to the security deposits, complete relief can be accorded among the existing parties by the return of Plaintiffs' own security deposits in full by Defendants, which is a consequence for violating Section 1950.5. *See* Cal. Civ. Code § 1950.5(h)(7) ("The landlord shall not be entitled to claim any amount of the

23cv1729-LL-VET

security if the landlord, in bad faith, fails to comply with this subdivision."); *Granberry*, 9 Cal. 4th at 745 ("If, within the specified period, the landlord has not provided the tenant with a written accounting of the portion of the security deposit he plans to retain, the right to retain all or part of the security deposit under section 1950.5, subdivision (f), has not been perfected, and he must return the entire deposit to the tenant."); *see also Leaser v. Prime Ascot, L.P.*, No. 2:20-CV-02502-DJC-AC, 2024 WL 3011226, at *6 n.4, 7–8 (E.D. Cal. June 12, 2024) (finding property management company—without regard to the plaintiffs' alter ego theory—may be held liable in restitution for the harm caused by its alleged business practices that involved excessive fee and security deposit schemes, even if the practices ultimately benefited the property owners). This defeats the first prong of finding a party "necessary." *See Zeff v. Greystar Real Est. Partners, LLC*, No. 20-CV-07122-EMC, 2021 WL 632614, at *3 (N.D. Cal. Feb. 18, 2021) (finding an absent party is not a necessary party under Rule 19(a)(1)(A) because the Court can "accord complete relief among existing parties"). With both prongs defeated, the Court finds the SPEs are not necessary parties and joinder is not required. Accordingly, the Motion to Dismiss is denied.

## B.   Motion to Strike

Alternatively, Defendants move to strike Plaintiffs' new allegations of an "Unauthorized Deduction Class," arguing that it was added without the Court's leave, it fails as a matter of law, and it is an impermissible "failsafe" class. *Id.* at 19–23.

### 1.   Scope of Leave to Amend

The Court does not find it appropriate to strike the added class definition for exceeding the Court's prior leave to amend. In the prior FAC Order, the Court permitted Plaintiffs to amend the FAC to correct deficiencies addressing one of the claims of relief sought, class members subject to arbitration and class action waivers, and the class period. ECF No. 48 at 12, 16, 20. In the SAC, Plaintiffs add a new subclass titled "Unauthorized Deduction Class," which does not address the deficiencies noted by the Court and thus exceeds the limited leave to amend. ECF No. 49 ¶ 515. However, the new

23cv1729-LL-VET

1   subclass does not add a new claim, and the Court finds no prejudice to Defendants in its

2   addition because Defendants can—and have—addressed it in the instant Motion to Strike.

3   *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1083 n.7 (S.D. Cal.

4   2017) (declining to dismiss a new claim for exceeding the court's limited leave to amend

5   because defendants could address it in its motion to dismiss and were therefore not

6   prejudiced by its addition).

7           **2.   Matter of Law**

8           Defendants argue that Plaintiffs' "Unauthorized Deduction Class" definition of

9   tenants "that had any portion of their security deposit used for any charge other than rent

10  in arrears, cleaning or repairing of their vacated unit" fails as a matter of law.

11  ECF No. 52-1 at 20–22. In support, Defendants contend that although "any charge other

12  than" rent, cleaning, or repairs is not specified, the only "unauthorized" charges

13  referenced in the SAC are utility charges, which are expressly allowed. *Id.*; ECF No. 54

14  at 6.

15          Plaintiffs oppose, arguing, *inter alia*, that Section 1950.5(e) provides: "The

16  landlord may claim of the security only those amounts as are reasonably necessary for the

17  purposes specified in subdivision (b)." ECF No. 53 at 20–21 (citing Cal. Civ. Code

18  § 1950.5(e)). They further argue that Section 1950.5(b) "enumerates the four permitted

19  uses of security deposits" of unpaid rent, repair of damages, cleaning, and repair or

20  replacement of landlord's furnishings of the leasehold, which does not include utility

21  charges. *Id.* at 21.

22          According to Rule 23(c), "[a]t an early practicable time after a person sues or is

23  sued as a class representative, the court must determine by order whether to certify the

24  action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Courts read this as "a mechanism

25  for exercising defective class allegations before discovery." *Sanders v. Apple Inc.*, 672

26  F. Supp. 2d 978, 990 (N.D. Cal. 2009). "[W]hile there is little authority on this issue

27  within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that

28  dismissal of class allegations at the pleading stage should be done rarely and that the

23cv1729-LL-VET

1    better course is to deny such a motion because the shape and form of a class action

2    evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage &*

3    *Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal quotation marks and

4    citations omitted). However, "[s]ometimes the issues are plain enough from the pleadings

5    to determine whether the interests of the absent parties are fairly encompassed within the

6    named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

7        The Court finds the issue regarding the Unauthorized Deduction Class is not

8    premature because the deficiency is clear from the pleading. *See id.* Section 1950.5

9    permits a landlord to claim from a security deposit "only those amounts as are reasonably

10   necessary for the purposes specified in subdivision (b)." Cal. Civ. Code § 1950.5(e).

11   Subdivision (b) states that "security" is any deposit, fee, payment, or charge "imposed at

12   the beginning of the tenancy to be used to reimburse the landlord for costs associated

13   with processing a new tenant or that is imposed as an advance payment of rent" and

14   which is "used or to be used *for any purpose, including, but not limited to*, any of the

15   following:"

> (1) The compensation of a landlord for a tenant's default in the payment of rent.
> (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant.
> (3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy. The amendments to this paragraph enacted by the act adding this sentence shall apply only to tenancies for which the tenant's right to occupy begins after January 1, 2003.
> (4) To remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement.

25   Cal. Civ. Code § 1950.5(b) (emphasis added).

26       The Court finds the allegations regarding the Unauthorized Deduction Class fail as

27   a matter of law. Plaintiffs premise this subclass on allegations that it is unlawful for

28   utility charges to be deducted from security deposits. ECF No. 49 ¶¶ 525, 532. However,

the plain text of subsections (b) and (e) of Section 1950.5 expressly allow security deposits to be used "for any purpose." Subsection (b) provides four examples of "purposes" and expressly states that permissible purposes include these examples "but are not limited to" them. Therefore, utility charges may be claimed from security deposits, and allegations that they are unauthorized deductions fail as a matter of law. Amendment would be futile because the plain meaning of 1950.5 allowing deductions for any purpose will not change. *See Desoto*, 957 F.2d at 658 (citation omitted). As such, the Court finds the mistaken allegations are immaterial and impertinent and grants the Motion to Strike without leave to amend.[4] *See Fantasy, Inc.*, 984 F.2d at 1527.

## IV.   CONCLUSION

As set forth above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss and Motion to Strike as follows:

1.   The Court **DENIES** the Motion to Dismiss Plaintiffs' SAC for failure to join necessary and indispensable parties.

2.   The Court **GRANTS** without leave to amend the Motion to Strike the Unauthorized Deduction Class and those portions of the SAC that allege or relate to allegations that utility charges are unauthorized deductions. This affects, at minimum, the following paragraphs of the SAC: 515(e), 517(a)-(b), 525, and 532.

3.   On or before **August 14, 2025,** Plaintiffs shall file a Third Amended Complaint that removes the stricken material.

/ / /

/ / /

/ / /

/ / /

---

[4] Having made this determination, the Court declines to reach the argument regarding a failsafe class.

1        4.     Defendants shall file their answer to the Third Amended Complaint

2  **fourteen days** after it is filed.

3        **IT IS SO ORDERED**.

4  Dated:  August 7, 2025

5

6                     Honorable Linda Lopez
                          United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28