No. _____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RONNIE BROOKS, an individual; LAURA SIEGEL, an individual;
TIFFANY VINSON, an individual; PHILIP MCGILL, an individual; ANNIE
CASTNER, an individual; and CHERELLE BLOUNT, an individual,

*Plaintiffs-Petitioners*,

v.

GREYSTAR REAL ESTATE PARTNERS, LLC,
a Delaware limited liability company; and
GREYSTAR CALIFORNIA, INC., a Delaware corporation,

*Defendants-Respondents*,

**PETITION FOR PERMISSION TO APPEAL
ORDER STRIKING CLASS ALLEGATIONS**

On Appeal from the United States District Court for the
Southern District of California
No. 3:23-cv-01729-LL-BGS
Hon. Linda Lopez

Jeffrey L. Hogue
Tyler J. Belong
HOGUE & BELONG
170 Laurel Street
San Diego, CA 92101
(619) 238-4720

Damion Robinson
Jimmie Davis Parker
ROBINSON MARKEVITCH & PARKER LLP
8430 Santa Monica Blvd., Suite 200
West Hollywood, CA 90069
(213) 757-7778
dr@robinsonmarkevitch.com

# **TABLE OF CONTENTS**

I. Introduction...................................................................................1

II. Statement of Jurisdiction ..............................................................2

III. Factual Background & Procedural History.....................................3

    A. Factual Allegations ...............................................................3

    B. The Class Claims ..................................................................4

    C. Procedural History ................................................................5

    D. The Order Striking Class Allegations....................................6

IV. Questions Presented ....................................................................6

V. Relief Requested ...........................................................................6

VI. Reasons Why Immediate Appeal Should Be Allowed......................6

    A. Legal Standard for Review Under Rule 23(f) ..........................6

    B. The Trial Court Committed Manifest Error…...........................7

        1. California's Comprehensive Security Deposit Scheme...................7

        2. The Trial Court Misread Section 1950.5(e) ....................................10

        3. The Trial Court's Interpretation Disregards the Statutory Structure and Legislative History .....................................................................12

    C. The Trial Court's Ruling Effectively Marks the Death Knell of the Unauthorized Deduction Claim…...........................................14

    D. Immediate Review Will Facilitate Consideration by the California Supreme Court ...............................................................................16

VII. Conclusion.................................................................................17

Addendum of Cited Statutes ...............................................................19

# TABLE OF AUTHORITIES

## Cases

*Action Apartment Ass'n v. Santa Monica Rent Control Bd.*,
   94 Cal. App. 4th 587 (2001) ............................................................................11

*Brooks v. Greystar Real Estate Partners, LLC*,
   2025 WL 2258583 (S.D. Cal. Aug. 7, 2025) .....................................................2

*Bryan v. United Parcel Serv., Inc.*,
   307 F. Supp. 2d 1108 (N.D. Cal. 2004) ...........................................................16

*Brewster v. Cnty. of Shasta*,
   112 F. Supp. 2d 1185 (E.D. Cal. 2000) ...........................................................16

*Chamberlain v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ..............................................................................7

*Cholakyan v. Mercedes-Benz USA, LLC*,
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) ...........................................................14

*City of Buffalo v. Hyundai Motor Am., Inc.*,
   140 F.4th 1249 (9th Cir. 2025) ........................................................................16

*Curtiss-Wright Corp. v. Helfand*,
   687 F.2d 171 (6th Cir. 1982) ...........................................................................15

*Granberry v. Islay Investments*,
   9 Cal. 4th 738 (1995) ................................................................................passim

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...........................................................................15

*High Country Paving, Inc. v. United Fire & Cas. Co.*,
   14 F.4th 976 (9th Cir. 2021) ............................................................................16

*In re Saldana*,
   122 F.4th 333 (9th Cir. 2024) ..........................................................................11

*In re Wal–Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ........................................................... 14

*Kleffman v. Vonage Hldgs. Corp.*,
    551 F.3d 847 (9th Cir. 2008) ......................................................................... 17

*Ma v. Ashcroft*,
    361 F.3d 553 (9th Cir. 2004) ......................................................................... 13

*Microsoft Corp. v. Baker*,
    582 U.S. 23 (2017) ...................................................................................... 6-7

*Pulsifer v. United States*,
    601 U.S. 124 (2024) ....................................................................................... 11

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................... 14

*Small Prop. Owners of S.F. v. Cty. and Cnty. of S.F.*,
    141 Cal. App. 4th 1388 (2006) ...................................................................... 12

*United States v. Fiorillo*,
    186 F.3d 1136 (1999 (9th Cir.)) .................................................................... 13

*United States v. Wilson*,
    503 U.S. 329 (1992) ....................................................................................... 13

## **Statutes and Rules**

28 U.S.C. § 1332(d) ............................................................................................ 2

Cal. Civ. Code § 1950.5 ............................................................................. passim

Cal. Civ. Code § 1954.207 ......................................................................... 10, 13

Cal. Bus. & Prof. Code § 17200 .......................................................................... 4

Cal. R. Ct. 8.548(b) ........................................................................................... 16

Fed. R. Civ. P. 23(f) ............................................................................................ 7

## <u>Secondary Sources</u>

Fed. R. Civ. P. 23, Advisory Committee Notes........................................................7

Hon. Terry B. Friedman, et al., *Cal. Prac. Guide: Landlord–Tenant*
    (The Rutter Group 2025) ..................................................................12

Merriam-Webster Dictionary Online........................................................11

## **INTRODUCTION**

In its decision striking class allegations, the trial court held that under California law a landlord is allowed to use a tenant's security deposit "*for any purpose*" it chooses after the tenant moves out. No other court has ever reached this conclusion. The notion that a landlord could keep tenants' deposits for any purpose would likely come as a shock to the millions of renters in California. It would also come as a shock to the California courts, which have repeatedly construed California's security deposit scheme to strictly limit how landlords may use security deposits. And it would probably also come as a shock to the California Legislature, which enacted a carefully calibrated statutory scheme designed to protect deposits from misuse by landlords.

The trial court's decision is manifestly erroneous and reflects a major shift in California landlord-tenant law, affecting the lives of millions of Californians.[1] Although the California appellate courts have not issued a precedential decision directly on point, they have long understood California's security deposit statute to narrowly limit how a landlord may use a tenant's deposit. Respected commentators have interpreted Section 1950.5[2] the same way, limiting the use of security deposits to the specific purposes enumerated in the statute. The trial court's contrary interpretation is not only against the weight of authority, but it undermines the fundamental purpose of the statute – *i.e.*, to protect tenants from having their deposits misappropriated or misused.

At present, the trial court's decision is the only citable opinion squarely

---

[1] According to the 2020 United States Census, approximately 45% of Californians live in rental housing. *See* United States Census Bureau, 2020 Census Demographic and Housing Characteristics File (DHC), Table H12 (Tenure by Household Size), https://www.census.gov/data/tables/2023/dec/2020-census-dhc.html (Last Accessed 8/14/2025).

[2] Section references herein are to the California Civil Code unless otherwise noted.

addressing basic question the purposes for which a landlord may use a tenant's deposit. *See Brooks v. Greystar Real Estate Partners, LLC*, No. 23cv1729, 2025 WL 2258583 (S.D. Cal. Aug. 7, 2025). Given the significance of this issue—both as a matter of pure California law, and as a practical matter affecting millions of renters—Plaintiffs Ronnie Brooks, *et al.* ("Plaintiffs") respectfully submit that it should be resolved by the California courts in the first instance. Certification of the question to the California Supreme Court is called for here.

Not only did the trial court's decision drastically alter the landscape of California landlord-tenant law, but it ended this case for an entire putative class. The court took the extraordinary step of striking Plaintiffs' class allegations relating to unauthorized deductions from their deposits. Members of the putative Unauthorized Deductions Class no longer have a live claim. This is effectively the death knell of Plaintiffs' and class members' claims relating to unauthorized deductions. Not only do they lack incentive to pursue those claims, but they literally cannot do so because the trial court decided the issue as a matter of law.

In the circumstances, the interests of efficiency and judicial economy strongly support immediate review. The parties should not be required to litigate the remaining class claims on the merits through trial with the looming prospect of having to do it all over again with respect to the unauthorized deduction claim. In a case involving hundreds of apartment complexes, and hundreds of thousands of putative class members, the time, expense, and complexity of a second litigation would be extraordinary if not prohibitive. It is in the best interest of all parties to resolve the issue now in a definitive fashion.

## STATEMENT OF JURISDICTION

The District Court has diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiffs are citizens of California. Defendants Greystar Real Estate Partners, LLC and Greystar California, Inc. (collectively

"Greystar" or "Defendants") are citizens of Delaware (their state of incorporation) and South Carolina (their principal place of business). The amount in controversy exceeds $5,000,000, representing the security deposits Plaintiffs contend Defendants unlawfully withheld.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.    Factual Allegations

Greystar is one of the largest institutional landlords in the country. It owns and manages hundreds of apartment complexes. *See* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Motion to Strike Second Amended Complaint ("Order") at 2:15-17 (attached). On its website, Greystar describes itself as "a leading, fully integrated real estate company offering expertise in investment management, development, and management of rental housing properties globally."[3]

Plaintiffs are former tenants of Greystar's complexes. Order at 2:19-20.

As a property manager, Greystar provides centralized services to all of the apartment complexes. *Id.* at 2:19-3:2. In this capacity, it sets all policies and procedures for handling security deposits at the hundreds of complexes. *Id.* at 3:2-4. It also oversees the administration of all tenant security deposits pursuant to these uniform policies and procedures. *Id.*

Plaintiffs contend that Greystar systematically mishandles tenant security deposits in violation of California Civil Code § 1950.5 in various ways, including:

- Uniformly failing to provide the mandatory disclosures and supporting documentation required by Section 1950.5(h);[4]

- Charging standard "cleaning fees" when tenants move out regardless of

---

[3] https://www.greystar.com/business/services (last accessed 8/20/2025).
[4] During the pendency of this case, Civil Code § 1950.5 was amended. Subdivision (h) was previously subdivision (g).

the condition of the unit, and without providing supporting information, in violation of Section 1950.5(e) and (h); and

-   Deducting from tenants' security deposits for charges that are not authorized by Section 1950.5(b) and (e), including utilities.

Under California law, the remedy for these violations is a full refund of the security deposit. *See Granberry v. Islay Investments*, 9 Cal. 4th 738, 745 (1995) (holding that if the landlord does not strictly adhere to Section 1950.5, "the right to retain all or part of the security deposit … has not been perfected, and he must return the entire deposit to the tenant").

### B.    The Class Claims

In the Second Amended Complaint, Plaintiffs identified three classes:

Unsubstantiated-Charges Class. All former tenants of Defendants whose leaseholds terminated between September 18, 2019 to present, and who had at least $125.00 of their security deposits retained for cleaning, repairs and/or replacements combined, excluding those tenants whose leases contained arbitration provisions including class action waivers.

Cleaning-Fee Class.   All former tenants of Defendants whose leaseholds terminated between October 13, 2016, to present and from whom Defendants withheld a portion of their security deposits for flat-fee cleaning charges.

Unauthorized Deduction Class.  All former tenants of Defendants that had any portion of their security deposit used for any charge other than rent in arrears, cleaning or repairing of their vacated unit.

Order at 5:14-28. Each of the classes relates to a specific legal theory. The Unsubstantiated-Charges Class relates to Defendants' failure to provide required statutory disclosure; the Cleaning-Fee class relates to Defendants' flat-fee cleaning charges; and the Unauthorized Deduction class relates to Defendants' deductions for utilities and other charges not authorized by

Section 1950.5.

Plaintiffs bring two causes of action on behalf of the classes: (a) Unlawful Retention of Residential Security Deposits under California Civil Code § 1950.5; and (b) Unfair Competition under California Business & Professions Code § 17200. Order at 5:8-11.

### C.    Procedural History

Plaintiffs filed suit on September 18, 2023. Order at 2:5-11. They filed a First Amended Complaint on November 2, 2023.[5]

Defendants filed a Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint.  On September 26, 2024, the trial court granted the Motion in part and denied it in part with leave to amend. *Id.* at 2:8-10.

Plaintiffs filed their Second Amended Complaint, which is the subject of this Petition, on October 3, 2024. *Id.* at 2:11. The Second Amended Complaint added the Unauthorized Deduction Class, referenced above, and a claim that Defendants deducted for charges not authorized by Section 1950.5(e), primarily utilities.

Defendants filed a Motion to Dismiss and Motion to Strike on October 31, 2024. They sought dismissal of the entire action on the theory that the single-purpose entities which hold title to the properties managed by Greystar are indispensable parties. Order at 8:5-11:16. They also sought to strike Plaintiffs' class allegations relating to the Unauthorized Deduction Class on three grounds: (a) that adding this class was beyond the scope of leave granted by the trial court; (b) that the unauthorized deduction claim fails as a matter of law because Section 1950.5 authorizes a landlord to use deposits for any purpose; and (c) that the class amounts to an improper "failsafe" class. *Id.* at 11:17-14:9.

---

[5] In their Complaint and First Amended Complaint, Plaintiffs named as defendants each of the single-purpose entities that holds title to the California apartment complexes managed by Greystar. Plaintiffs then voluntarily dismissed these additional defendants.

Plaintiffs timely opposed.

### D.    The Order Striking Class Allegations

On August 7, 2025, the trial court issued its Order granting Defendants' Motion in part and denying it in part. The trial court rejected Defendants' arguments that the entities holding title are indispensable. Order at 10:18-11:16. It struck the class allegations relating to the Unauthorized Deductions Class, however, finding that the claims on behalf of that class fail as a matter of law because California Civil Code § 1950.5(e) permits a landlord to use tenants' security deposits "for any purpose." *Id.* at 12:8-14:9.

## QUESTIONS PRESENTED

1.    Should this Court permit immediate review of the trial court's order striking class allegations and/or certify the question to the California Supreme Court where (a) the trial court's order relies on a manifestly erroneous interpretation of California statutory law and (b) there is no precedential California decision directly on point?

2.    Should this Court permit immediate review of the trial court's order where that order represents the death knell of class claims because it decides the underlying claims as a matter of law, precluding further litigation.

## RELIEF REQUESTED

Plaintiffs request permission to appeal the trial court's order striking class allegations pursuant to Federal Rule of Civil Procedure 23(f).

## REASONS WHY IMMEDIATE APPEAL SHOULD BE ALLOWED

### A.    Legal Standard for Review Under Rule 23(f)

On a petition filed by any party, "[a] court of appeals may permit an appeal from an order granting or denying class-action certification[.]" Fed. R. Civ. P. 23(f). An order striking class allegations is "functionally equivalent" to an order denying class certification and is "appealable under Rule 23(f)." *Microsoft Corp. v.*

*Baker*, 582 U.S. 23, 34 fn. 7 (2017) (citation and quotation marks omitted)

The Federal Rules give courts of appeals "unfettered discretion" over whether to accept immediate appeals of class-certification rulings. Fed. R. Civ. P. 23, Advisory Committee Notes to 1998 Amendments, Subdivision (f). The Ninth Circuit has found immediate review most appropriate in three situations:

1.   Where the ruling "effectively ends the litigation" for reasons other than the merits, referred to as a "death knell" situation, "coupled with a class certification decision by the district court that is questionable." *Chamberlain v. Ford Motor Co.*, 402 F.3d 952, 957, 959 (9th Cir. 2005).

2.   The decision "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review." *Id.* at 959.

3.   The decision below "is manifestly erroneous." *Id.*

These categories "do not constitute an exhaustive list of factors and are not intended to circumscribe the broad discretion granted" under Rule 23(f). *Id.* at 960. They "are merely guidelines, not a rigid test," and a case need not fall neatly within the above categories to warrant immediate review. *Id.*

**B.    The Trial Court Committed Manifest Error In Interpreting California Civil Code § 1950.5 to Allow a Landlord to Use a Tenant's Deposit "For Any Purpose."**

**1.    California's Comprehensive Security Deposit Scheme**

California's detailed statutory scheme for handling residential security deposits it set forth in Civil Code § 1950.5. That section, originally enacted in 1970, is a tenant-protection statute intended "to prevent the misuse of security deposits." *Granberry*, 9 Cal.4th at 745.

It starts from the fundamental premise that a security deposit belongs to the tenant, not the landlord. Security deposits are effectively held in trust. Cal. Civ. Code § 1950.5(d) ("Any security shall be held by the landlord for the tenant").

Section 1950.5(b) broadly defines "security" to avoid recharacterization of the deposit as rent, fees, or other charges that the landlord may keep:

> As used in this section, "security" means any payment, fee, deposit, or charge, including, but not limited to, any payment, fee, deposit, or charge, except as provided in Section 1950.6, that is imposed at the beginning of the tenancy to be used to reimburse the landlord for costs associated with processing a new tenant or that is imposed as an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following:
>
> (1) The compensation of a landlord for a tenant's default in the payment of rent.
>
> (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant.
>
> (3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy. The amendments to this paragraph enacted by the act adding this sentence shall apply only to tenancies for which the tenant's right to occupy begins after January 1, 2003.
>
> (4) To remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement.

The statute goes on to provide exhaustive limitations on the use of deposits.

Section 1950.5(e) provides that a landlord may "claim of the security only those amounts as are reasonably necessary for the purposes specified in subdivision (b)." Cal. Civ. Code § 1950.5(e)(1). Subdivision (e) further limits the uses of security deposits, (i) prohibiting the deposit from being used to address damages or defects "that preexisted the tenancy" or "ordinary wear and tear,"; (ii) requiring that any charges for supplies "be limited to a reasonable amount

- 8 -

necessary to restore the premises" to their pre-lease condition; and (iii) prohibiting charges for "professional carpet cleaning or other professional cleaning services" unless necessary to return the unit to its condition at the commencement of the lease, "exclusive or ordinary wear and tear." *Id.*, subd. (e)(2)(A) through (C).

A tenant is entitled to demand a move-out inspection "to allow the tenant an opportunity to remedy identified deficiencies … in order to avoid deductions from the security." Cal. Civ. Code § 1950.5(f)(1). After the inspection, the landlord must provide an "itemized statement" listing any repairs or cleaning "that are proposed to be the basis for any deductions from the security," and an opportunity "to remedy the identified defects … in order to avoid deductions. *Id.*, subd. (f)(2), (3).[6]

Finally, Section 1950.5(h) provides a detailed set of mandatory disclosures, which must be provided within 21 days of the end of the tenancy:

- The landlord must provide an "itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security." *Id.*, subd. (h)(1).

- If the landlord deducts for in-house cleaning or repairs, it shall "reasonably describe the work performed," including "the time spent and the reasonable hourly rate charged." *Id.*, subd. (h)(2)(A).

- If an outside vendor performs the work, the landlord must provide "the bill, invoice, or receipt" from the vendor. *Id.*, subd. (h)(2)(B).

- If the landlord charges for materials or supplies, it "shall provide a copy of the bill, invoice, or receipt," or if the supplies are regularly purchased, "a bill, invoice, receipt, vendor price list, or other vendor document that reasonably describes the cost." *Id.*, subd. (h)(2)(C).

---

[6] New section 1950.5(g), effective July 1, 2025, requires the landlord to take photographs of the condition of the unit before occupancy and after the tenant vacates to document the condition.

The landlord may not claim *any* portion of the deposit if it fails in bad faith to comply with these disclosure requirements. *Id.*, subd. (h)(7).

A landlord's bad faith failure to comply with any of the requirements of Section 1950.5 also subjects it to statutory double damages in addition to actual damages. Cal. Civ. Code § 1950.5(m).

Against this backdrop, it is apparent that the trial court's interpretation of Section 1950.5 as allowing a landlord to use the deposit "for any purpose" is manifestly erroneous.

### 2.    The Trial Court Misread Section 1950.5(e).

Section 1950.5(e) states that a landlord may deduct "only those amounts as are reasonably necessary for the purposes specified in subdivision (b)." Cal. Civ. Code § 1950.5(e)(1). Subdivision (b) contains two parts: an introductory paragraph defining "security" broadly to include all amounts received by a landlord "for any purpose," and an enumerated list of purposes for which a security deposit may be used, *i.e.*, repair, cleaning, and unpaid rent.[7]

The trial court simply misread the statute by assuming that Section 1950.5(e) refers to the broad, introductory paragraph of Section 1950.5(b), rather than the specific list of permissible uses. Its reading is contrary to the language of the statute, its structure as a whole, and legislative history—not to mention decisions of the California Court of Appeal.

Although the trial court suggested that it was relying on the plain language of the statute, the plain language does not support its interpretation. The language of Section 1950.5(e) is limiting, providing that a landlord may deduct "***only*** those amounts as are ***reasonably necessary*** for the purposes specified in subdivision (b)." (Emphasis added). Under the trial court's interpretation, however, the statute

---

[7] Section 1954.207 also specifically authorizes a deduction for a "water service bill" attached to the required move-out disclosures.

would ultimately read that a landlord may claim "only those amounts as are reasonably necessary" for "any purpose." This is not a logical interpretation. It renders an important clause superfluous. It is also inconsistent with the plain meaning of the term "specified," *i.e.*, "to name or state explicitly or in detail." Merriam-Webster Dictionary Online, *specify.*

Instead, Section 1950.5(b) and (e) are intended to function together by ensuring broad coverage while also protecting tenant's deposits. The prefatory paragraph of subdivision (b) defines "security" broadly to ensure that the statute covers all forms of security, *i.e.*, "any payment, fee, deposit, or charge," regardless of how they are characterized by the landlord. It goes on to list a series of permissible uses for tenant deposits at subdivisions (b)(1) to (4). Subdivision (e), in turn, ensures that landlords will "only" use deposits for proper purposes. Unless the uses permitted are limited in some manner, subdivision (e) would be meaningless because a landlord could use the deposit for whatever it chooses. *In re Saldana*, 122 F.4th 333, 342 (9th Cir. 2024) ("A core canon of statutory construction is the rule against surplusage," meaning that courts interpret statutes to avoid rendering portions "inoperative or superfluous, void or insignificant") (citation omitted). The rule against surplusage applies "with special force" where an interpretation would render "an entire subparagraph meaningless," *i.e.*, Section 1950.5(e). *Id.* at 343 (quoting *Pulsifer v. United States*, 601 U.S. 124, 143 (2024)).

Although the California appellate courts have never issued a holding specifically interpreting Section 1950.5(e), they have repeatedly discussed that section in analyzing other parts of the statute. Each time, they have read it to limit the uses of security deposits to the four enumerated uses specified in Section 1950.5(b). *See Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 94 Cal. App. 4th 587, 600 (2001) (noting that a landlord "may use a security deposit in several ways" and quoting the four uses specified in subdivision (b)(1) to (4));

- 11 -

*Small Prop. Owners of S.F. v. Cty. and Cnty. of S.F.*, 141 Cal. App. 4th 1388, 1397 fn. 2 (2006) ("The landlord may claim amounts from the deposits that are reasonably necessary for ***certain purposes***, including compensation for a tenant's default in payment of rent or damages to the premises") (citing Cal. Civ. Code § 1950.5(b), (e)) (emphasis added). No California case has ever held, or even suggested, that a deposit may be used for "any purpose."

Respected commentators have also interpreted the statute as limiting the uses of security deposits. A leading California landlord-tenant treatise notes, "[l]andlords do not have unlimited discretion to use the deposits as they please." Hon. Terry B. Friedman, et al., *Cal. Prac. Guide Landlord-Tenant*, Ch. 2E-1 ¶ 2:773 (The Rutter Group 2025). Instead, a security deposit remains the tenant's property "unless and until properly used to remedy a tenant's rent default and/or to compensate the landlord for damage and cleaning." *Id.* The treatise goes on to identify the same four permissible uses. *Id.* ¶ 2:774–2:778.

### 3. The Trial Court's Interpretation Disregards the Statutory Structure and Legislative History.

Section 1950.5, as a whole, is designed to restrict landlords' use of deposits. *See Granberry*, 9 Cal. 4th at 745-46. The California Legislature enacted it to prevent security deposits from being treated "as a bonus to be kept by the landlord," "to ensure the speedy return of security deposits … and to prevent the improper retention of such deposits." *Id.* at 746. The original version of Section 1950.5(e), specifically listed the purposes for which the deposit could be used, *i.e.* "to remedy tenant defaults in the payment of rent, to repair damages to the premises caused by the tenant, or to clean such premises upon termination of the tenancy." *Id.* at 745 (quoting Stats.1970, ch. 1317, p. 2453.) There is no suggestion that in amending the statute to cross-refer to Section 1950.5(b), which contains the same list of uses, the California Legislature intended to radically alter the statutory

scheme by allowing landlords to use deposits "for any purpose."

This expansive interpretation is inconsistent with the statutory scheme as a whole. *See United States v. Fiorillo*, 186 F.3d 1136, 1146 (9th Cir. 1999) ("Examination of the plain language of the statute itself always marks the starting point of our analysis. In addition to the particular statutory language, however, we look to the design of the statute as a whole."). Allowing landlords to use deposits for "any purpose" would undermine broad swaths of the statute.

Most obviously, the specific restrictions listed in Section 1950.5(e) would be meaningless. There would be no point in prohibiting deposits from being used to cover "ordinary wear and tear" or limiting the use of "professional carpet cleaning" if a landlord could use the deposit "for any purpose" it wanted. A landlord could avoid these restrictions simply by recharacterizing its use of the deposit as a processing fee or move-out charge.[8]

The specific statutory disclosure requirements and move-out inspection would also be rendered ineffectual. Under Section 1950.5(f), a tenant may demand an inspection for the specific purpose of "avoid[ing] deductions from the security." Section 1950.5(h) requires specific and detailed disclosures, including specific backup documentation, to allow a tenant to verify the legitimacy of the charges asserted against the deposit. A landlord could avoid these requirements simply by using the deposit for other purposes, such as general building maintenance or improving the unit for new tenants.

Finally, taken to its logical conclusion, the trial court's interpretation of the statute would lead to absurd results. *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) ("statutory interpretation which would produce absurd results are to be

---

[8] Similarly, if the landlord could use the deposit "for any purpose," there would be no need for Civil Code § 1954.207(c) to specifically authorize the use of deposits for water service bills.

avoided") (citing *United States v. Wilson*, 503 U.S. 329, 334 (1992)). Allowing landlords to use deposits for "any purpose" has no logical limit. Nothing would prevent them from using deposits for purposes wholly unrelated to the tenancy. For example, a landlord could use the deposit for capital improvements, to build a new apartment complex, pay dividends to shareholders, or give bonuses to management—or, for that matter, to go on vacation. This cannot be what the Legislature intended in enacting a comprehensive statutory scheme to prevent "misuse" of deposits. *Granberry*, 9 Cal. 4th at 745.

### C. The Trial Court's Ruling Effectively Marks the Death Knell of the Unauthorized Deduction Claim.

The trial court took the extraordinary step of striking Plaintiffs' class allegations at the pleading stage. Striking class allegations is justified only in "rare" circumstances. *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). "[T]he better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *Id.* (citation and quotation marks omitted); *see also Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011). "Before a motion to strike is granted, the court must be convinced that any questions of law are **clear and not in dispute**, and that under no set of circumstances could the claim or defense succeed." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (emphasis added; citation omitted). The trial court's interpretation of Section 1950.5(e) is far from clear and is plainly disputed.

By ruling as a matter of law that Section 1950.5(e) allows deductions "for any purpose" the trial court effectively terminated all claims related to unauthorized deductions by Plaintiffs and absent class members. Not only do Plaintiffs not have incentive to pursue such claims individually, but they cannot do

so. The trial court's ruling precludes discovery and trial on claims relating to improper deductions under Section 1950.5(e). This is effectively the "death knell" of Plaintiffs' claims under that section.

The premature rejection of the Unauthorized Deduction Class also portends extraordinary complications moving forward. Without an immediate appeal, the parties will have to wait until after trial on the remaining class claims before a final ruling on the unauthorized deduction claim. If this Court ultimately disagrees with the trial court's interpretation of Section 1950.5—a pure issue of law, subject to *de novo* review—the parties would then have to complete a second discovery process and a second trial. Not only would this result in significant inefficiency and duplication, but it would make administration of any class recovery intractable and delay adjudication of class members' rights by years. In a class action on behalf of hundreds of thousands of tenants, these complications may prove insurmountable and would severely prejudice class members.

Delaying a final resolution of the statutory interpretation issue will also make it extraordinarily difficult to settle this case. "[T]he vast majority" of class actions "are settled rather than litigated." *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 173 (6th Cir. 1982). It is unclear how the parties can negotiate a class settlement without a final determination of the proper interpretation of Section 1950.5(e).  Under this Court's precedent, a class release can be no broader than the claims asserted in the operative pleading. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (holding that released claims must be "based on the identical factual predicate" as the asserted claims). The parties here cannot negotiate a release of the section 1950.5(e) claims as part of any settlement because those claims are no longer a part of this case. It is unlikely that the parties will be able to negotiate a piecemeal settlement with a significant portion of the claims omitted and subject to appeal. Even if they could do so, this raises the prospect of settling

the case, only to continue litigating on appeal and in the trial court if this Court reverses the ruling under Section 1950.5(e).

### D.    Immediate Review Will Facilitate Consideration of an Important Question of State Law By the California Supreme Court.

Although district courts are not permitted to directly certify issues to the California appellate courts, this Court may do so. *See* Cal. R. Ct., rule 8.548(a) (permitting referral of an issue on appeal by "a United States Court of Appeals"). Interlocutory appeals are an appropriate vehicle to facilitate review of important issues of state law by state courts, especially issues of first impression. *See Bryan v. United Parcel Serv., Inc.*, 307 F. Supp. 2d 1108, 1115 (N.D. Cal. 2004) (noting that "no such avenue is available to the district courts," and certifying order for appeal with suggestion of referral to the California Supreme Court); *see also Brewster v. Cnty. of Shasta*, 112 F. Supp. 2d 1185, 1192 fn. 18 (E.D. Cal. 2000) ("Granting an interlocutory appeal should not represent an undue burden on the Ninth Circuit as the determinative matter here turns initially on an issue of California law susceptible to certification").

In determining whether to certify an issue to the California Supreme Court, this court considers: "(1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) the spirit of comity and federalism." *City of Buffalo v. Hyundai Motor Am., Inc.*, 140 F.4th 1249, 1253-54 (9th Cir. 2025) (quoting *High Country Paving, Inc. v. United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir. 2021). Certification to the California Supreme Court is uniquely appropriate here and these factors weigh heavily in favor of certifying the issue.

The question presented – *i.e.*, whether Section 1950.5 imposes any limitation

- 16 -

on permissible uses of security deposits – is a basic and fundamental issue of California landlord-tenant law. No California court has issued a binding decision directly on point, although courts and commentators have repeatedly read the statute contrary to the trial court's interpretation. If the trial court's interpretation is correct, it reflects a major shift in California law, which could have profound effects throughout the statutory scheme.

The issue is not only significant as a legal matter but has significant public policy implications. In enacting Section 1950.5, the California Legislature recognized the strong public policy need to protect deposits due to their prevalent misappropriation by landlords. *See Granberry*, 9 Cal. 4th at 945.  This issue affects millions of Californians who rent their homes. A landlord's improper withholding can create financial hardship, especially for tenants who rely on the return of the deposit to afford new housing. Security deposit litigation is also pervasive in small claims courts, meaning the question is likely to recur. *See Kleffman v. Vonage Hldgs. Corp.*, 551 F.3d 847, 849 (9th Cir. 2008) (certifying issue where statute had not yet been interpreted and "the issue is likely to emerge again").

Given the significance of this issue as a legal and public policy matter, the basic question of how a landlord may use the tenant's deposit should be decided in the first instance by a California court.

## CONCLUSION

For the foregoing reasons, the Court should grant immediate review of the district court's order striking class allegations and either reverse that order or certify the legal question to the California Supreme Court.

Dated: August 21, 2025                    Respectfully submitted,


                                          /s/ Damion Robinson
Jeffrey L. Hogue                          Damion Robinson
Tyler J. Belong                           Jimmie Davis Parker
HOGUE & BELONG                            ROBINSON MARKEVITCH & PARKER LLP
170 Laurel Street                         8430 Santa Monica Blvd., Suite 200
San Diego, CA 92101                       West Hollywood, CA 90069
(619) 238-4720                            (213) 757-7778
                                          dr@robinsonmarkevitch.com

## **ADDENDUM OF CITED STATUTES**

Plaintiffs/Petitioners respectfully submit this Addendum of Cited Statutes in support of the foregoing Petition.

### **California Civil Code § 1950.5. Security for rental agreement for residential property used as a dwelling of tenant; amount and disposition; damages**

(a) This section applies to security for a rental agreement for residential property that is used as the dwelling of the tenant.

(b) As used in this section, "security" means any payment, fee, deposit, or charge, including, but not limited to, any payment, fee, deposit, or charge, except as provided in Section 1950.6, that is imposed at the beginning of the tenancy to be used to reimburse the landlord for costs associated with processing a new tenant or that is imposed as an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following:

(1) The compensation of a landlord for a tenant's default in the payment of rent.

(2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant.

(3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy. The amendments to this paragraph enacted by the act adding this sentence shall apply only to tenancies for which the tenant's right to occupy begins after January 1, 2003.

(4) To remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement.

. . .

(d) Any security shall be held by the landlord for the tenant who is party to the lease or agreement. The claim of a tenant to the security shall be prior to the claim of any creditor of the landlord.

(e)(1) Subject to paragraph (2), the landlord may claim of the security only those amounts as are reasonably necessary for the purposes specified in subdivision (b).

- 19 -

(2)(A) The landlord shall not assert a claim against the tenant or the security for damages to the premises or any defective conditions that preexisted the tenancy, for ordinary wear and tear or the effects thereof, whether the wear and tear preexisted the tenancy or occurred during the tenancy, or for the cumulative effects of ordinary wear and tear occurring during any one or more tenancies.

(B) Claims against the tenant or the security for materials or supplies and for work performed by a contractor, the landlord, or the landlord's employee shall be limited to a reasonable amount necessary to restore the premises back to the condition it was in at the inception of the tenancy, exclusive of ordinary wear and tear.

(C) The landlord shall not require a tenant to pay for, or assert a claim against the tenant or the security for, professional carpet cleaning or other professional cleaning services, unless reasonably necessary to return the premises to the condition it was in at the inception of tenancy, exclusive of ordinary wear and tear.

(f)(1) Within a reasonable time after notification of either party's intention to terminate the tenancy, or before the end of the lease term, the landlord shall notify the tenant in writing of the tenant's option to request an initial inspection and of the tenant's right to be present at the inspection. At a reasonable time, but no earlier than two weeks before the termination or the end of lease date, the landlord, or an agent of the landlord, shall, upon the request of the tenant, make an initial inspection of the premises prior to any final inspection the landlord makes after the tenant has vacated the premises. The purpose of the initial inspection shall be to allow the tenant an opportunity to remedy identified deficiencies, in a manner consistent with the rights and obligations of the parties under the rental agreement, in order to avoid deductions from the security. If a tenant chooses not to request an initial inspection, the duties of the landlord under this subdivision are discharged. If an inspection is requested, the parties shall attempt to schedule the inspection at a mutually acceptable date and time. The landlord shall give at least 48 hours' prior written notice of the date and time of the inspection if either a mutual time is agreed upon, or if a mutually agreed time cannot be scheduled but the tenant still wishes an inspection. The tenant and landlord may agree to forgo the 48-hour prior written notice by both signing a written waiver. The landlord shall proceed with the inspection whether the tenant is present or not, unless the tenant previously withdrew their request for the inspection. Written notice by the landlord shall contain, in substantially the same form, the following:

"State law permits former tenants to reclaim abandoned personal property left at the former address of the tenant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property

and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact your former landlord after being notified that property belonging to you was left behind after you moved out."

(2) Based on the inspection, the landlord shall give the tenant an itemized statement specifying repairs or cleanings that are proposed to be the basis of any deductions from the security the landlord intends to make pursuant to paragraphs (1) to (4), inclusive, of subdivision (b). This statement shall also include the texts of paragraphs (1) to (4), inclusive, of subdivision (b). The statement shall be given to the tenant, if the tenant is present for the inspection, or shall be left inside the premises.

(3) The tenant shall have the opportunity during the period following the initial inspection until termination of the tenancy to remedy identified deficiencies, in a manner consistent with the rights and obligations of the parties under the rental agreement, in order to avoid deductions from the security.

(4) Subject to paragraphs (5) and (6), if an initial inspection is conducted pursuant to this subdivision and, at the time of inspection, the premises do not contain tenant possessions that prevent the landlord from identifying repairs or cleanings due to the presence of those possessions, the landlord shall not use the security for deductions for repairs or cleanings that are not identified in the itemized statement described in paragraph (2).

(5) Nothing in this subdivision shall prevent a landlord from using the security for deductions itemized in the statement provided for in paragraph (2) that were not cured by the tenant so long as the deductions are for damages authorized by this section.

(6) Nothing in this subdivision shall prevent a landlord from using the security for any purpose specified in paragraphs (1) to (4), inclusive, of subdivision (b) that occurs between completion of the initial inspection when possession of the unit is returned to the landlord or that was not identified during the initial inspection due to the presence of a tenant's possessions.

(7) The requirements of this subdivision do not apply when the tenancy is terminated pursuant to subdivision (2), (3), or (4) of Section 1161 of the Code of Civil Procedure.

(g)(1) For tenancies that begin on or after July 1, 2025, the landlord shall take photographs of the unit immediately before, or at the inception of, the tenancy.

(2) Beginning April 1, 2025, the landlord shall take photographs of the unit within a reasonable time after the possession of the unit is returned to the landlord, but prior to any repairs or cleanings for which the landlord will make

a deduction from or claim against the security deposit pursuant to this section, and shall also take photographs of the unit within a reasonable time after such repairs or cleanings are completed.

(h)(1) No later than 21 calendar days after the tenant has vacated the premises, but not earlier than the time that either the landlord or the tenant provides a notice to terminate the tenancy under Section 1946 or 1946.1, Section 1161 of the Code of Civil Procedure, or not earlier than 60 calendar days prior to the expiration of a fixed-term lease, the landlord shall furnish the tenant, by personal delivery or by first-class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security, and shall return any remaining portion of the security to the tenant. After either the landlord or the tenant provides notice to terminate the tenancy, the landlord and tenant may mutually agree to have the landlord deposit any remaining portion of the security deposit electronically to a bank account or other financial institution designated by the tenant. After either the landlord or the tenant provides notice to terminate the tenancy, the landlord and the tenant may also agree to have the landlord provide a copy of the itemized statement along with the copies required by paragraph (2) to an email account provided by the tenant.

(2) The landlord shall also include, along with and at the same time the itemized statement is sent, copies of documents showing charges incurred and deducted by the landlord to repair or clean the premises, as follows:

(A) If the landlord or landlord's employee did the work, the itemized statement shall reasonably describe the work performed. The itemized statement shall include the time spent and the reasonable hourly rate charged.

(B) If the landlord or landlord's employee did not do the work, the landlord shall provide the tenant a copy of the bill, invoice, or receipt supplied by the person or entity performing the work. The itemized statement shall provide the tenant with the name, address, and telephone number of the person or entity, if the bill, invoice, or receipt does not include that information.

(C) If a deduction is made for materials or supplies, the landlord shall provide a copy of the bill, invoice, or receipt. If a particular material or supply item is purchased by the landlord on an ongoing basis, the landlord may document the cost of the item by providing a copy of a bill, invoice, receipt, vendor price list, or other vendor document that reasonably documents the cost of the item used in the repair or cleaning of the unit.

(D) If a deduction is made for repairs or cleanings allowed by this section, the landlord shall provide photographs taken pursuant to subdivision (g), along with a written explanation of the cost of the allowable

repairs or cleanings, as described in subparagraphs (A) to (C), inclusive. The landlord may provide such photographs to the tenant by mail, email, computer flash drive, or by providing a link where the tenant may view the photographs online.

(3) If a repair to be done by the landlord or the landlord's employee cannot reasonably be completed within 21 calendar days after the tenant has vacated the premises, or if the documents from a person or entity providing services, materials, or supplies are not in the landlord's possession within 21 calendar days after the tenant has vacated the premises, the landlord may deduct the amount of a good faith estimate of the charges that will be incurred and provide that estimate with the itemized statement. If the reason for the estimate is because the documents from a person or entity providing services, materials, or supplies are not in the landlord's possession, the itemized statement shall include the name, address, and telephone number of the person or entity. Within 14 calendar days of completing the repair or receiving the documentation, the landlord shall complete the requirements in paragraphs (1) and (2) in the manner specified.

(4) The landlord need not comply with paragraph (2) or (3) if either of the following applies:

(A) The deductions for repairs and cleaning together do not exceed one hundred twenty-five dollars ($125).

(B) The tenant waived the rights specified in paragraphs (2) and (3). The waiver shall only be effective if it is signed by the tenant at the same time or after a notice to terminate a tenancy under Section 1946 or 1946.1 has been given, a notice under Section 1161 of the Code of Civil Procedure has been given, or no earlier than 60 calendar days prior to the expiration of a fixed-term lease. The waiver shall substantially include the text of paragraph (2).

(5) Notwithstanding paragraph (4), the landlord shall comply with paragraphs (2) and (3) when a tenant makes a request for documentation within 14 calendar days after receiving the itemized statement specified in paragraph (1). The landlord shall comply within 14 calendar days after receiving the request from the tenant.

(6) Any mailings to the tenant pursuant to this subdivision shall be sent to the address provided by the tenant. If the tenant does not provide an address, mailings pursuant to this subdivision shall be sent to the unit that has been vacated.

(7) The landlord shall not be entitled to claim any amount of the security if the landlord, in bad faith, fails to comply with this subdivision.

. . .

(m) The bad faith claim or retention by a landlord or the landlord's successors in interest of the security or any portion thereof in violation of this section, or the bad faith demand of replacement of security in violation of subdivision (k), may subject the landlord or the landlord's successors in interest to statutory damages of up to twice the amount of the security, in addition to actual damages. The court may award damages for bad faith whenever the facts warrant that award, regardless of whether the injured party has specifically requested relief. In an action under this section, the landlord or the landlord's successors in interest shall have the burden of proof as to the reasonableness of the amounts claimed or the authority pursuant to this section to demand additional security deposits.

(n) A lease or rental agreement shall not contain a provision characterizing any security as "nonrefundable."

(o) An action under this section may be maintained in small claims court if the damages claimed, whether actual, statutory, or both, are within the jurisdictional amount allowed by Section 116.220 or 116.221 of the Code of Civil Procedure.

(p) Proof of the existence of and the amount of a security deposit may be established by any credible evidence, including, but not limited to, a canceled check, a receipt, a lease indicating the requirement of a deposit as well as the amount, prior consistent statements or actions of the landlord or tenant, or a statement under penalty of perjury that satisfies the credibility requirements set forth in Section 780 of the Evidence Code.

. . .

### California Civil Code § 1954.207. Beginning and ending of tenancy; submeter readings; deduction of unpaid water service bills from security deposit

. . .

(c) The landlord may, at his or her discretion, deduct an unpaid water service bill from the security deposit during or upon termination of a tenancy, if the last water service bill showing the amount due is attached to the documentation required by Section 1950.5.

# # #

**ORDER SUBJECT TO PETITION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE BROOKS, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>GREYSTAR REAL ESTATE<br>PARTNERS, LLC;<br>GREYSTAR CALIFORNIA INC., et al.,<br><br>                                    Defendants. | Case No.:  23cv1729-LL-VET<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS AND<br>MOTION TO STRIKE SECOND<br>AMENDED COMPLAINT**<br><br>[ECF No. 52] |

Before the Court is a Motion to Dismiss and Motion to Strike Plaintiffs' Second Amended Complaint filed by Defendants Greystar California, Inc. and Greystar Real Estate Partners, LLC (collectively "Greystar" or "Defendants"). ECF No. 52. Plaintiffs filed an Opposition to the Motion [ECF No. 53] and Defendants filed a Reply [ECF No. 54].[1] The Court finds this matter suitable for determination on the papers and

---

[1] Defendants also filed a Request for Judicial Notice in support of Defendants' Motion to Dismiss and Motion to Strike the Second Amended Complaint. ECF No. 52-2. Plaintiffs filed an opposition [ECF No. 53-1], and Defendants filed a reply [ECF No. 54-1]. Specifically, Defendants request judicial notice of (1) lease agreements for named

1

without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss and Motion to Strike.

## I.  BACKGROUND

This matter was initiated on September 18, 2023. ECF No. 1. On July 19, 2024, the Court granted Greystar's motion to compel arbitration as to named Plaintiff Philip McGill. ECF No. 44.

On September 26, 2024, the Court granted in part an denied in part Defendants' motion to strike and motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). ECF No. 48.

On October 3, 2024, Plaintiffs filed a Second Amended Complaint ("SAC"). ECF No. 49. In the SAC, six named Plaintiffs sue Greystar in a putative class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), claiming, *inter alia*, Greystar unlawfully withheld portions of tenants' security deposits without providing required statutory disclosures. ECF No. 49 ¶¶ 6, 7. Plaintiffs allege that Greystar "owns, controls and/or manages" hundreds of properties on behalf of the owners, referred to as Single Purpose Entities ("SPEs"). *Id.* ¶¶ 29, 31, 35.

The following factual allegations are from the SAC.

Plaintiffs are former tenants of apartment complexes owned, controlled, and/or managed by Greystar. *Id.* ¶¶ 13–19, 29–31. Greystar is the property manager for all apartment complexes in the FAC. *Id.* ¶ 29. The apartment complexes that are not owned

---

Plaintiffs and (2) court filings containing discovery materials in *Zeff v. Greystar California, Inc.*, No. 3:20cv07122-EMC (N.D. Cal.). ECF No. 52-2 at 3–4. The Court **DENIES** Defendants' Request for Judicial Notice because they were not necessary to the Court's analysis and the Court did not reference the materials. *See Mercado v. Audi of Am., LLC*, No. EDCV1802388JAKSPX, 2019 WL 9051000, at *3 (C.D. Cal. Nov. 26, 2019) (denying request for judicial notice of exhibits that were not necessary to the court's analysis).

by Greystar in whole or part are owned by parties referred to in the SAC as SPEs. *Id.* ¶ 31. Greystar "sets all policies and procedures for the administration of security deposits, and oversees the administration of the security deposits, either by way of its ownership, property-management contracts, or both." *Id.* ¶¶ 32, 474–75.

Greystar directly owns, through various layers of limited liability corporations, seven of the apartment complexes described in the SAC. *Id.* ¶¶ 45, 46, 47, 53, 54, 56, 72. Another twenty-one of the apartment complexes in the SAC may be "indirectly or beneficially owned, or controlled by Greystar as part of the same unitary enterprise" due to sharing the same officers and directors, principal addresses, registered agents for service of process, or the same employees and attorneys as the registered owners. *Id.* ¶¶ 44, 48–52, 55, 57–71. Greystar is the agent of the owners for the remaining 389 apartment complexes owned by SPEs for the purposes of property management, including administration of tenant security deposits. *Id.* ¶¶ 73–464.

Greystar, through its corporate policies and practices, "in bad faith, retains security deposits from tenants in violation of California law" and "conceals this bad faith withholding" by intentionally failing to provide mandatory disclosures required by California Civil Code section 1950.5. *Id.* ¶ 472. Greystar also "has a pattern and practice of systemically either issuing payment beyond the 21-day deadline specified in California Civil Code section 1950.5(g), or sometimes, not at all." *Id.* ¶ 478.

The named Plaintiffs are former tenants of six different apartment complexes in California managed and/or operated by Greystar.[2] *Id.* ¶¶ 13–18, 23.

Plaintiff Ronnie Brooks was a tenant of Solaire Apartments in Temecula who submitted a $700 security deposit and moved out on May 1, 2023. *Id.* ¶¶ 15, 487. Greystar emailed a "summary of move out charges" and a "final account statement" that

---

[2] Plaintiff Philip McGill has been compelled to arbitrate his claims, and there is no summary of his situation in the SAC. *See* ECF No. 44; ECF No. 49 ¶ 14 & n.3.

indicated a $235 charge for a "cleaning fee," but provided no bills, invoices, receipts, or description of the work performed or hours and hourly rates. *Id.* ¶ 488.

Plaintiff Tiffany Vinson was a tenant at Gema Apartments in San Diego who provided a $400 security deposit and moved out on June 8, 2023. *Id.* ¶¶ 13, 491. Greystar emailed her a final account statement on July 6, 2023, after she requested it, which included a $240 charge for a cleaning fee and a $20 charge for "Final Utility Admin Fee & Move Out Fee," but no third-party bills, invoices, receipts, or description of hours and rates worked by any Greystar employees. *Id.* ¶ 492. Vinson disputed the charges citing the Civil Code but Greystar "ignored the correspondence." *Id.* ¶ 494.

Plaintiff Annie Castner was a tenant at Calypso Apartments and Lofts in Irvine who submitted a $400 security deposit and moved out on November 19, 2021. *Id.* ¶¶ 17, 495. In June 2022, Castner received an email notice that she had a balance due of $184.42 to Greystar in addition to her security deposit, which she disputed. *Id.* ¶ 496. On September 21, 2022, Greystar emailed Castner a "Summary of Move Out Charges" that included $215.58 for "Damages – Sub-task – 6057172 – Floor – Carpet – Replace," $174.17 for "Damages – Sub-task – 6057171 – Walls Paint – Full," and $120 for "Damages – Sub-task – 6057170 – Cleaning Based on Full Unit – Full," but provided no vendor bills, invoices, receipts, description of tasks performed, or hours and rates worked by any Greystar employees. *Id.* ¶ 497.

Plaintiff Laura Seigel was a tenant at Breakwater Apartments in Huntington Beach who submitted a $2,437.50 security deposit and moved out on March 16, 2023. *Id.* ¶¶ 16, 499. On April 26, 2023, after several requests from Seigel regarding her security deposit, Greystar Assistant Community Manager informed Seigel that "the check was cut today" and would be sent to her forwarding address. *Id.* ¶ 506. She received a check for $723.59 from Greystar, which withheld from her security deposit $950 for "Rebuild Closet," $275 for "Full Paint ($44) Charge Back 50%," $120 for "Carpet Cleaning," and $230 for "Full Unit Cleaning 3x2," but Greystar did not include vendor documentation. *Id.* ¶¶ 507–08.

/ / /

Plaintiff Cherrelle Blount was a tenant at the Frederic apartments in Sacramento who submitted a security deposit of $3,220 and moved out on July 1, 2023. *Id.* ¶¶ 18, 509. Blount received a final account statement in an envelope dated July 14, 2023 that indicated deductions of $190 for "Heavy clean + Trash out fridge," $91.16 for "Paint PM 200 0 EG EXTRA," and $195 for "Paint @ $39/hr 5 hours LABOR." *Id.* ¶¶ 510. However, Blount did not receive the balance of her security deposit, nor invoices or other documentation for the deductions. *Id.* ¶¶ 511–12.

Plaintiffs bring a claim for unlawful retention of residential security deposits in violation of California Civil Code section 1950.5 ("Section 1950.5") and a derivative claim for violation of the Unfair Competition Law, section 17200 of the California Business and Professions Code ("UCL"). *Id.* ¶¶ 518–27, 528–35.

Plaintiffs seek to litigate their claims as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) and propose the following class definitions:

> **Unsubstantiated-Charges Class**: All former tenants of Defendants whose leaseholds terminated between September 18, 2019 to present, and who had at least $125.00 of their security deposits retained for cleaning, repairs and/or replacements combined, excluding those tenants who leases contained arbitration provisions including class action waivers.
>     a.    **In-House Charges Subclass**: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted in-house repair or cleaning.
>     b.    **In-House Supplies Subclass**: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted in-house supplies.
>     c.    **Vendor Charges Subclass**: All members of the Unsubstantiated Charges Class whom Defendants charged for asserted third-party services or supplies.
>     d.    **Cleaning-Fee Class**: All former tenants of Defendants whose leaseholds terminated between September 18, 2019 to present and from whom Defendants withheld a portion of their security deposits for flat-fee cleaning charges.
>     e.    **Unauthorized Deduction Class**: All former tenants of Defendants whose leaseholds terminated between September 18, 2019 to present that had any portion of their security deposit used for any charge other than rent in arrears, cleaning or repairing of their vacated unit.

*Id.* ¶¶ 514–15, 517.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *Desoto*, 957 F.2d at 658 (citation omitted).

## B. Motion to Strike

Federal Rule of Civil Procedure 12 provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted). An "immaterial" matter "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (citation omitted). "Impertinent" statements "do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). "Scandalous" matter casts "a cruelly derogatory light on a party or other person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "[M]otions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019) (citation omitted).

## III. DISCUSSION

Defendants argue that the entire SAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join necessary and indispensable parties under

Federal Rule of Civil Procedure 19. ECF No. 52-1 at 7. Alternatively, Defendants argue that Plaintiffs' new allegations of an "Unauthorized Deduction Class" should be stricken from the SAC. *Id.* at 7.

### A. Necessary and Indispensable Parties

Defendants contend that the SPEs are necessary and indispensable parties because Plaintiffs' request for relief is not possible in their absence. ECF No. 52-1 at 7. Plaintiffs oppose, arguing that joinder is not necessary, that they do not seek to hold the SPEs liable and do not seek recovery against the SPEs, and that the Court previously considered and rejected an identical argument by Defendants when they sought to dismiss the First Amended Complaint. ECF No. 53 at 14, 18.

Federal Rule of Civil Procedure 19 provides that a party is necessary if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
    (i) as a practical matter impair or impede the person's ability to protect the interest; or
    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Failure to join a necessary party under Rule 19 is grounds for a motion to dismiss. Fed. R. Civ. P. 12(b)(7).

If the party is necessary and cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the parties or should be dismissed" because the party is indispensable. Fed. R. Civ. P. 19(b). To do so, the court must consider the following factors:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
    (A) protective provisions in the judgment;
    (B) shaping the relief; or
    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application. The moving party has the burden of persuasion in arguing for dismissal." *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) (citation omitted).

Defendants argue that joinder of the SPEs is required because of the form of relief Plaintiff seeks, but the Court does not agree. Defendants contend that the SPEs are necessary because Plaintiffs seek the return of the entirety of all Plaintiffs' and Plaintiff Class's security deposits, which they claim are owned by the SPEs.[3] ECF No. 52-1 at 16–17; ECF No. 49 at 80. According to Defendants, this ownership means that the SPEs have "an interest relating to the subject of the action" and that the "court cannot accord complete relief" pursuant to Rule 19. ECF No. 52-1 at 16–17. The Court is not persuaded. First, security deposits are owned by tenants—not the SPEs—and held by landlords. Cal. Civ. Code § 1950.5(d); *In re Choy*, 569 B.R. 169, 183–84 (Bankr. N.D. Cal. 2017) ("California Civil Code § 1950.5(d) requires that a residential landlord 'hold' a tenant's security deposit."); *Small Prop. Owners of San Francisco v. City & Cnty. of San Francisco*, 141 Cal. App. 4th 1388, 1398 n.4 (2006) (noting that landlords do not own the security deposits). Second, the SPEs have not claimed an interest in this action.

---

[3] Defendants misstate and mischaracterize the Court's findings in its September 26, 2024 order that granted in part and denied in part Defendants' motion to strike and motion to dismiss the First Amended Complaint ("FAC Order") by claiming (1) "the Court already found" that "the SPEs own Plaintiffs' security deposits" and (2) "the Court already held that the former 'entity defendants' (now the 'SPEs') are necessary parties under Rule 19." ECF Nos. 52-1 at 17; 54 at 7. First, the Court found that the property owners "own the debts owed by tenants, although Defendants administer the billing and collection of them" and did not include security deposits in that description. ECF No 48 at 12. Second, the Court found the SPEs are necessary and indispensable only to the extent that Plaintiffs sought injunctive relief to extinguish outstanding balances. *Id.* at 12.

9

*See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (finding joinder is not necessary where the absent party does not claim an interest in the matter). For these reasons, the Court does not find an absent party claims an interest relating to the subject of the action, which defeats the second prong of finding a party "necessary." Furthermore, Plaintiffs allege that *Defendants'* actions violate statutory rules regarding security deposits, which necessitates their return.

Section 1950.5 of the California Civil Code governs the use and return of security deposits for rental properties, which the Supreme Court of California described as follows:

> From the plain language of the statute we conclude that a landlord (1) must return a tenant's security deposit within the specified period after the termination of the tenancy, (2) may retain all or part of the security deposit as compensation for unpaid rent, repairs, and cleaning, and (3) must provide a written accounting of any amounts retained within the specified period. If, within the specified period, the landlord has not provided the tenant with a written accounting of the portion of the security deposit he plans to retain, the right to retain all or part of the security deposit under section 1950.5, subdivision (f), has not been perfected, and he must return the entire deposit to the tenant.

*Granberry v. Islay Invs.*, 9 Cal. 4th 738, 744–45 (1995).

Plaintiffs sufficiently allege that complete relief can be accorded among the existing parties. Plaintiffs allege in the SAC that Greystar, "rather than the SPEs, is tasked with administering tenant security deposits at each of the complexes identified herein." ECF No. 49 ¶ 36. Plaintiffs further allege that Defendants violated Section 1950.5 in bad faith by, *inter alia*, retaining all of part of their security deposits after they moved out without providing the required documentation to substantiate any amounts withheld, which requires the return of their entire security deposits. *Id.* ¶¶ 3–5, 472–76, 483–85. Therefore, if Plaintiffs prevail as to the security deposits, complete relief can be accorded among the existing parties by the return of Plaintiffs' own security deposits in full by Defendants, which is a consequence for violating Section 1950.5. *See* Cal. Civ. Code § 1950.5(h)(7) ("The landlord shall not be entitled to claim any amount of the

security if the landlord, in bad faith, fails to comply with this subdivision."); *Granberry*, 9 Cal. 4th at 745 ("If, within the specified period, the landlord has not provided the tenant with a written accounting of the portion of the security deposit he plans to retain, the right to retain all or part of the security deposit under section 1950.5, subdivision (f), has not been perfected, and he must return the entire deposit to the tenant."); *see also Leaser v. Prime Ascot, L.P.*, No. 2:20-CV-02502-DJC-AC, 2024 WL 3011226, at *6 n.4, 7–8 (E.D. Cal. June 12, 2024) (finding property management company—without regard to the plaintiffs' alter ego theory—may be held liable in restitution for the harm caused by its alleged business practices that involved excessive fee and security deposit schemes, even if the practices ultimately benefited the property owners). This defeats the first prong of finding a party "necessary." *See Zeff v. Greystar Real Est. Partners, LLC*, No. 20-CV-07122-EMC, 2021 WL 632614, at *3 (N.D. Cal. Feb. 18, 2021) (finding an absent party is not a necessary party under Rule 19(a)(1)(A) because the Court can "accord complete relief among existing parties"). With both prongs defeated, the Court finds the SPEs are not necessary parties and joinder is not required. Accordingly, the Motion to Dismiss is denied.

### B.    Motion to Strike

Alternatively, Defendants move to strike Plaintiffs' new allegations of an "Unauthorized Deduction Class," arguing that it was added without the Court's leave, it fails as a matter of law, and it is an impermissible "failsafe" class. *Id.* at 19–23.

### 1.    Scope of Leave to Amend

The Court does not find it appropriate to strike the added class definition for exceeding the Court's prior leave to amend. In the prior FAC Order, the Court permitted Plaintiffs to amend the FAC to correct deficiencies addressing one of the claims of relief sought, class members subject to arbitration and class action waivers, and the class period. ECF No. 48 at 12, 16, 20. In the SAC, Plaintiffs add a new subclass titled "Unauthorized Deduction Class," which does not address the deficiencies noted by the Court and thus exceeds the limited leave to amend. ECF No. 49 ¶ 515. However, the new

subclass does not add a new claim, and the Court finds no prejudice to Defendants in its addition because Defendants can—and have—addressed it in the instant Motion to Strike. *See Dr. Seuss Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1083 n.7 (S.D. Cal. 2017) (declining to dismiss a new claim for exceeding the court's limited leave to amend because defendants could address it in its motion to dismiss and were therefore not prejudiced by its addition).

### 2. Matter of Law

Defendants argue that Plaintiffs' "Unauthorized Deduction Class" definition of tenants "that had any portion of their security deposit used for any charge other than rent in arrears, cleaning or repairing of their vacated unit" fails as a matter of law. ECF No. 52-1 at 20–22. In support, Defendants contend that although "any charge other than" rent, cleaning, or repairs is not specified, the only "unauthorized" charges referenced in the SAC are utility charges, which are expressly allowed. *Id.*; ECF No. 54 at 6.

Plaintiffs oppose, arguing, *inter alia*, that Section 1950.5(e) provides: "The landlord may claim of the security only those amounts as are reasonably necessary for the purposes specified in subdivision (b)." ECF No. 53 at 20–21 (citing Cal. Civ. Code § 1950.5(e)). They further argue that Section 1950.5(b) "enumerates the four permitted uses of security deposits" of unpaid rent, repair of damages, cleaning, and repair or replacement of landlord's furnishings of the leasehold, which does not include utility charges. *Id.* at 21.

According to Rule 23(c), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Courts read this as "a mechanism for exercising defective class allegations before discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). "[W]hile there is little authority on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that dismissal of class allegations at the pleading stage should be done rarely and that the

better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal quotation marks and citations omitted). However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

The Court finds the issue regarding the Unauthorized Deduction Class is not premature because the deficiency is clear from the pleading. *See id.* Section 1950.5 permits a landlord to claim from a security deposit "only those amounts as are reasonably necessary for the purposes specified in subdivision (b)." Cal. Civ. Code § 1950.5(e). Subdivision (b) states that "security" is any deposit, fee, payment, or charge "imposed at the beginning of the tenancy to be used to reimburse the landlord for costs associated with processing a new tenant or that is imposed as an advance payment of rent" and which is "used or to be used *for any purpose, including, but not limited to*, any of the following:"

> (1) The compensation of a landlord for a tenant's default in the payment of rent.
> (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant.
> (3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy. The amendments to this paragraph enacted by the act adding this sentence shall apply only to tenancies for which the tenant's right to occupy begins after January 1, 2003.
> (4) To remedy future defaults by the tenant in any obligation under the rental agreement to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear, if the security deposit is authorized to be applied thereto by the rental agreement.

Cal. Civ. Code § 1950.5(b) (emphasis added).

The Court finds the allegations regarding the Unauthorized Deduction Class fail as a matter of law. Plaintiffs premise this subclass on allegations that it is unlawful for utility charges to be deducted from security deposits. ECF No. 49 ¶¶ 525, 532. However,

13

the plain text of subsections (b) and (e) of Section 1950.5 expressly allow security deposits to be used "for any purpose." Subsection (b) provides four examples of "purposes" and expressly states that permissible purposes include these examples "but are not limited to" them. Therefore, utility charges may be claimed from security deposits, and allegations that they are unauthorized deductions fail as a matter of law. Amendment would be futile because the plain meaning of 1950.5 allowing deductions for any purpose will not change. *See Desoto*, 957 F.2d at 658 (citation omitted). As such, the Court finds the mistaken allegations are immaterial and impertinent and grants the Motion to Strike without leave to amend.[4] *See Fantasy, Inc.*, 984 F.2d at 1527.

## IV. CONCLUSION

As set forth above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion to Dismiss and Motion to Strike as follows:

1. The Court **DENIES** the Motion to Dismiss Plaintiffs' SAC for failure to join necessary and indispensable parties.

2. The Court **GRANTS** without leave to amend the Motion to Strike the Unauthorized Deduction Class and those portions of the SAC that allege or relate to allegations that utility charges are unauthorized deductions. This affects, at minimum, the following paragraphs of the SAC: 515(e), 517(a)-(b), 525, and 532.

3. On or before **August 14, 2025,** Plaintiffs shall file a Third Amended Complaint that removes the stricken material.

/ / /

/ / /

/ / /

/ / /

---

[4] Having made this determination, the Court declines to reach the argument regarding a failsafe class.

14

4.    Defendants shall file their answer to the Third Amended Complaint **fourteen days** after it is filed.

**IT IS SO ORDERED**.

Dated:  August 7, 2025

_____
Honorable Linda Lopez
United States District Judge

23cv1729-LL-VET

## <u>CERTIFICATE OF COMPLIANCE</u>

### [Fed. R. App. P. 32; Circuit Rule 32-1]

1.    This petition complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman type style font.

2.    This petition complies with the page limit requirement of Fed. R. App. P. 5(c) because it does not exceed 20 pages or 5,200 words, excluding the cover page, tables, signature block, certificates, addendum of cited statutes, and attached order.


Dated: August 21, 2025                */s/ Damion Robinson*
                                        Damion Robinson

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 21, 2025. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that I caused a copy of the foregoing Petition to be sent via FedEx overnight to counsel for the other parties as follows:

> Mark G. Rackers, Esq.
> Anna Jane I Zarndt, Esq.
> SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
> 501 West Broadway, 18th Floor
> San Diego, California 92101-3598
> mrackers@sheppardmullin.com
> azarndt@sheppardmullin.com

Dated: August 21, 2025                    */s/ Damion Robinson*
                                          Damion Robinson

- 26 -